## VALJEAN et al. v. PERFECTION STOVE CO.
### No. 7761.

Circuit Court of Appeals, Sixth Circuit.
April 7, 1939.

Franklin M. Warden, of Chicago, Ill., and Carroll R. Taber, of Lansing, Mich. (Franklin M. Warden, of Chicago, Ill., and Carroll R. Taber, of Lansing, Mich., on the brief), for appellants.

George I. Haight, of Chicago, Ill., and John B. Hull, of Cleveland, Ohio (George I. Haight, of Chicago, Ill., and John B. Hull and Hull, Brock & West, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

By emphasis in briefs and argument, and by adjudications below and elsewhere, the controversy in the present patent infringement suit appears to be essentially one in respect to infringement, with decision controlled by the breadth of construction which in the light of the prior art and the history of the patent should be given to the patent claims.

The patent is No. 1,512,869, for a combustion apparatus issued to Valjean, October 21, 1924. The appellants are the inventor and his licensee, and supporting the decree dismissing their bill is a stove manufacturer of Cleveland, Ohio, charged with infringing claims 1 to 6 inclusive, and claim 9, by manufacture and sale of its Superfex oil heater. The master held the claims valid and infringed. The court rejected his findings of infringement, upon a narrow construction of the claims, of which claim 1, printed in the margin[1] is typical. Claims 1 and 9 were construed in Sears, Roebuck

---

[1] Combustion apparatus, embodying a combustion chamber with an opening, a carbureter shell with an upper discharge opening registering with the combustion chamber opening, the edges of the two openings being spaced apart to form an air entry slot through which air enters in a direction across the axis of the openings, the carbureter shell having air entry openings in its wall and means to introduce fuel to the carbureter shell.

& Co. v. Valjean et al., 7 Cir., 76 F.2d 592, 593, where it was held that the prior art and patent history had so severely limited the patent that the patentee was entitled, at most, to the precise device described in the claims, and where the patented apparatus was briefly though sufficiently described in structure and function.

We need add little to the descriptive matter of the reference. The patent relates to a liquid fuel burner adapted to be set in domestic stoves and ranges. The art was old and crowded. Valjean claims an apparatus for the practicing of a process described in a co-pending application, upon which there issued to him patent No. 1,-280,596. The process he describes consists in forming nonexplosive lean and rich mixtures of gas and air and precipitating combustion at a predetermined point by introducing a current of air flowing crosswise of their flow. "By this means," he says, "I am able surer and more effectively to locate definitely the position of the flame and thus in the apparatus to definitely separate what I may term the carbureting chamber from the combustion chamber with beneficial results." Each of the claims includes as elements a combustion chamber, a carburetor shell, and means for introducing fuel to the shell. The additional phrasing of the claims relates to the positioning of the carburetor and the combustion chamber in respect to each other, and to what are called primary and secondary air inlet openings. The primary air entries are perforations in the wall of the carburetor shell, and their function is to introduce into the carburetor a limited supply of air to be mixed with the vapors of the fuel. Secondary air is introduced through a peripheral slot between the bottom wall of the combustion chamber and the top wall of the carburetor, these walls projecting radially inwardly to form a slightly restricted throat between the two chambers. The function of the secondary air inlet is to introduce air necessary to complete combustion of the mixture formed in the carburetor, to fix the upper limit at which combustion may occur, and to prevent extinguishment of the fire and danger of explosion.

In his description, Valjean asserts that the throat between mixing and combustion chamber is large enough so as not to compress the upwardly traveling distinct streams of mixtures, but "the inwardly and transversely (horizontally) traveling stream of air that comes through annular slot 11 travels athwart those upwardly moving mixture streams and intimately and thoroughly mixes them and causes complete combustion to take place at that point, if it has not taken place lower in the mixture." When the apparatus is operated at its normal or full capacity the flame always has the appearance of issuing from the peripheral slot, and it is recited that this definite determination of the point of combustion is one of the important features of the invention. It admits of a definite and accurate application of the heat at any desired point and in any desired manner, makes possible the definite location of insulating protection, and permits the carburetor to be made of light material and so easily removable.

When Valjean filed his original application in the Patent Office his claims were rejected as anticipated by Moss, No. 608,394, on the ground that there was no patentable distinction between a number of peripheral orifices as in Moss and a peripheral slot, that no invention was shown in the manner of fuel delivery to the carburetor over Milburn, 906,541, and that the method of mixing air and fuel vapor by directing air jets into the vapor was old in Koll, 578,246, and Wilder, 525,038, and that there was no invention in replacing the mixing means shown by them for that shown by Moss.

Responsive to this patent office action Valjean amended each of claims 1-6 in suit by qualifying the air entry slot elements with phrasing particularly descriptive of structure and function, i. e., "through which air enters in a direction across the axis of the opening," and amended claim 9, printed in the margin[2] so as to indicate specifically the registering of the opening in the wall of the carburetor with the opening in the wall of the combustion chamber.

[2] Combustion apparatus embodying a combustion chamber with a wall having an opening, a carbureter with a wall having an opening registering with the combustion chamber opening, and means to hold the carbureter in such relation to the combustion chamber as to space the two walls and openings apart to form an air inlet slot between the walls through which air enters the openings in a direction transverse of their axis.

It would seem from this patent office history that Valjean conceived the novelty of his invention to reside in the peripheral slot, so contrived as to admit secondary air for complete combustion at the throat between carburetor and combustion chamber in a direction across the axis of the opening, or "horizontally," and in the precise registering of the openings in the upper wall of the carburetor and the lower wall of the combustion chamber.

The accused device is a combination of elements similar to those recited in the claims. It has a perforated mixing chamber, a combustion chamber, and a peripheral slot for introducing secondary air. We pass the question as to whether the defendant's mixing chamber is in a true sense a carburetor as that element is described in the patent. Its secondary air inlet opening, however, does not admit air horizontally or in a direction across the axis of the opening. The slot is turned downwardly, admitting the air into the interior of the mixing chamber, the upper wall of which is not in register with the lower wall of the combustion chamber. It follows from this, and so the master found, that in normal operation, at what is called the "high fire" stage, there is in the accused device a substantial burning of vapor in the mixing chamber, whereas in Valjean the burning is, and is so intended, entirely in the combustion chamber beginning at the throat between the two. The advantages claimed for the patent are thus not realized, either in positioning the flame at the predetermined point or in permitting the mixing chamber of the assailed structure to be made of light material, easily removable.

■ The controlling question as we view it is whether the range of equivalency permitted to the inventor is such that it comprehends the variation here shown. The master thought the departure from the patent merely colorable, since the turning down of the walls of the peripheral slot permitted secondary air to be drawn into the mixing chamber at an angle departing but 25 degrees from the horizontal. We have, however, consistently held to the rule that "where the claim defines an element in terms of its form, material, location or function, thereby apparently creating an express limitation, where that limitation pertains to the inventive step rather than to its mere environment, and where it imports a substantial function which the patentee considered of importance to his invention, the court cannot be permitted to say that other forms, which the inventor thus declared not equivalent to what he claimed as his invention, are nevertheless to be treated as equivalent." D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 259 F. 236, 240; Hollingshead Co. v. Bassick Mfg. Co., 6 Cir., 73 F.2d 543, 548; Directoplate Corp. v. Donaldson Lithographing Co., 6 Cir., 51 F.2d. 199; Dillon Pulley Co. v. McEachran, 6 Cir., 69 F.2d 144; Firestone Tire & Rubber Co. v. U. S. Rubber Co., 6 Cir., 79 F.2d 948.

■ The rule, we think, is general. While patent office arguments do not create estoppel, yet when an inventor accepts claims as allowed he is bound by them, Smith v. Magic City Kennel Club, 282 U.S. 784, 51 S.Ct. 291, 75 L.Ed. 707, and when he has surrendered a position either voluntarily or because of patent office insistence, he may not recapture it. Firestone Tire & Rubber Co. v. U. S. Rubber Co., supra. We think the principle controls decision. We do not apply to the change made in the accused device the test of patentability, since we have held, Gordon Form Lathe Co. v. Walcott Machine Co., 6 Cir., 32 F. 2d 55, 61, that superiority of operation, even when brought about by a valuable improvement which perhaps was patentable as such, will not of necessity negative infringement. It is clear, however, in the present case, that Valjean's inventive step resides in the peripheral slot, which spaced between walls of combustion chamber and carburetor in register, directs a flow of air across, athwart, and horizontal to the rising streams of fuel mixture. Without this element so precisely defined and claimed it would be difficult to concede (as we do) validity to the claims. In structure, function and results it is the heart of Valjean's achievement, its importance stressed in the patent and emphasized by its history. We think the claims are not infringed by the assailed heaters.

The decree below is affirmed.