### LUNATI et al. v. BARRETT.
No. 7824.

Circuit Court of Appeals, Sixth Circuit.
June 8, 1939.

Lynn A. Williams and R. O. Hinkle, both of Chicago, Ill. (Lynn A. Williams and Ross O. Hinkle, both of Chicago, Ill., and A. H. Edgerton, of Cleveland, Ohio, on the brief), for appellants.

Ralph Kalish, of St. Louis, Mo. (Ralph Kalish, of St. Louis, Mo., and Frank Harrison and Squire, Sanders & Dempsey, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The patent involved in the present infringement suit is for a lifting device for motor vehicles granted to Lunati September 1, 1925, and numbered 1,552,326. It has for its object the providing of a device whereby a vehicle may be elevated to permit ready access to its mechanism for the purpose of repairing, cleaning and lubricating, and is of the single column hydraulic type now commonly seen at repair garages and greasing stations.

The Lunati claims in suit are 3 and 4, printed in the margin.[1] It was held below that the defendant did not infringe. There was no decision as to validity, since the defendant proved no direct anticipation, failed to give notice of lack of invention as a defense, and was not permitted belatedly to amend. While proof of the state of the art is admissible without notice to aid the court in the construction of the patent, Dunbar v. Meyers, 94 U.S. 187, 24 L.Ed. 34, it is not clear that invalidity may be adjudicated without affirmatively pleading it unless the patent is void on its face. Brown v. Piper, 91 U.S. 37, 44, 23 L.Ed. 200. Cf. Slawson v. Grand Street P. P. & F. R. R. Co., 107 U.S. 649, 652, 2 S.Ct. 663, 27 L.Ed. 576. We limit our consideration of the controversy likewise to the question of infringement, but upon this issue, since it requires claim construction, it becomes necessary to explore the prior art and to ascertain where in the disclosure the quality of invention, if any, resides.

Lunati did not invent a hydraulic lifting device. Moreover, the appellant concedes that if spaced parallel rails arranged on opposite sides of the supporting member were omitted it would render the claims in suit descriptive of ordinary hydraulic platform elevators, and they would then be the equivalent of claims of the original application, which were rejected and cancelled. While we recognize that

---

[1] 3. A vehicle lifting device comprising a vertical cylinder, a piston mounted to reciprocate therein, means for supplying fluid pressure to said cylinder to lift said piston, a supporting member carried by the upper end of said piston, and a pair of spaced parallel rails arranged on opposite sides of said supporting member, said member being provided with outwardly diverging portions secured at their ends to said rails near the centers thereof, said rails being relatively long and free from extraneous elements from their ends to the diverging portions of said supporting member.

4. A vehicle lifting device comprising a vertical cylinder, a piston mounted to reciprocate therein, means for supplying fluid pressure to said cylinder to lift said piston, a supporting member carried by the upper end of said piston, and a pair of spaced parallel rails arranged on opposite sides of said supporting member, the sides of said supporting member being arranged beneath and secured to said rails near their centers, said supporting member, centrally of and parallel to said rails being relatively short, said rails being relatively long and free from extraneous elements from their ends to the diverging portions of said supporting member.

the patent is for a combination, and that the combination may be new, even though its elements be old, yet to be patentable there must be invention in the thought of combining them, and certainly it cannot be conceived that invention resides in the substitution of spaced parallel rails for the platform of conventional hydraulic lifts exemplified in the patent to Milliken, No. 243,391, June 28, 1881, nor that in devising means for lifting a motor vehicle of predetermined and standardized gauge rather than packing cases or wheel barrows, spaced parallel rails, even if not otherwise obvious, are not clearly suggested by the spaced parallel rails of earlier greasing pits or the rails of the pit-jacks illustrated in Wood, No. 657,148, and Appleton and McCoy, 1,002,797, even were we to give no thought to the channel bars of Gearing and McGee, 877,709, or the rails of Bauman, 1,087,424, of the identical art, because they were not to be elevated by a single or double column hydraulic hoist.

The inventive concept of the patent must therefore necessarily reside in the thought of combining with these old elements the specific supporting means or cross-head of the patent by which the spaced rails are carried from the single cylinder head of the combination, and here there may have been room for invention, for difficulty may be perceived in designing and positioning a supporting member so as to carry rails upon which a weight of two or more tons would be suspended on a single base without such obstruction thereunder as would defeat the purpose of the inventor. The supporting means are set forth with some precision in the claims in suit, their configuration and positioning being covered by amendment to overcome claim rejection in the patent office upon the prior art, and they are depicted in the drawings.

The supporting member of the combination is characterized in claim 3 as "being provided with outwardly diverging portions secured at their ends to said rails near the centers thereof, said rails being relatively long and free from extraneous elements from their ends to the diverging portions of said supporting member" and in claim 4 thus: "The sides of said supporting member being arranged beneath and secured to said rails near their centers, said supporting member, centrally of and parallel to said rails being relatively short, said rails being relatively long and free from extraneous elements from their ends to the diverging portions of said supporting member." As depicted in the drawings, the sides of the supporting member on either side of the cylinder head have extensions which diverge in opposite directions from each other and toward opposite ends of the supported rail, or as described by witnesses "flare." Thus it results that the supporting member on a line "centrally of and parallel to said rails" is relatively short, as described in claim 4. The defendant's cross-head has extensions which form straight bars from rail to rail. There is no divergence of their ends in respect to each other, and no flare as they approach the supported rails. The issue below was whether this was the equivalent of the cross-head of the patent, and much refinement of argument is pressed by the appellant to demonstrate that it is.

The word "diverging" was not included in either of the cancelled claims 3 and 4, nor was the cross-head there referred to. The appellant argues that the configuration of the cross-head now carried into the claims describing its ends as outwardly diverging is not limited to extensions on either side of the cross-head diverging from each other toward the ends of the rails, but permissibly includes ends that diverge outwardly in opposite directions from the cylinder head to the rails where they are attached "near the centers thereof." It is sufficient characterization of this argument to say that it is probably the best that could be made. When the claims specify a "supporting" member for spaced parallel rails on opposite sides of the cylinder head, it approaches the absurd to insist that its ends must then be further described as diverging from the cylinder head to meet the rails which they support as though otherwise the rails might be thought to be suspended in space. But conceding that an overly literal solicitor in an excess of caution might wish to insert in the claims a description of the exact configuration of the cross-head to show that it was not a solid block but was provided with extensions to meet the rails and so be secured to the rails at their ends, he would more commonly and naturally describe these ends as outwardly or laterally extended portions than as diverging ends of the supporting member. We need not, however, indulge in this speculation. The description of the supporting member in

claim 4 to the effect that "centrally of and parallel to said rails" it is relatively short clearly demonstrates that elsewhere it is longer, and if its relative relation to the rails was intended there would have been no need of centering this dimension. It follows that the claims contain a limitation that cross-head ends diverge from each other and not from the cylinder head. And this concept of the flare of the cross-head extensions is supported by the drawings which are not limited to a preferred form. There is moreover an obvious functional virtue in the diverging ends of the cross-head, and it requires neither argument nor demonstration to point out that a rail carrying a heavy weight may the more easily be kept in balance on a broader base than on one comparatively short. We agree with the court below that this limitation does not read upon the supporting member of the defendant, though we do not attach the same significance to the word "outwardly" since it is impossible to conceive that solids may diverge otherwise than outwardly when the divergence is conceived of in the same plane.

The appellant argues that even though we consider this a limitation there is no estoppel by reason of the amendment because other limitations were therein incorporated, including narrow spaced parallel rails, arranged on opposite sides of the supporting member, and secured at their ends near the centers of the rails, the latter being relatively long and free from extraneous elements from their ends to the extensions of the supporting member. We are, however, dealing with a combination, the elements of which were old, precisely limited to avoid prior art. If the defendant does not have this combination he does not infringe.

The claims in suit must be narrowly construed within the principle so often applied in this court that where claims define an element in terms of form, location, or function, thereby creating an express limitation, where that limitation pertains to the inventive step and imports a substantial function which the patentee considered of importance, the court cannot be permitted to say that other forms which the inventor thus declared not equivalent are so to be treated. D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 259 F. 236, 240; Hollingshead Company v. Bassick Mfg. Co., 6 Cir., 73 F.2d 543, 548;

Directoplate Corp. v. Donaldson Lithographing Co., 6 Cir., 51 F.2d 199, and our recent decision in Valjean v. Perfection Stove Co., 6 Cir., 103 F.2d 60. Whether our conclusion be based upon estoppel in patent office proceedings or upon a limitation voluntarily inserted in the claims to avoid prior art seems to us unimportant. The result in claim construction is the same.

The decree below is affirmed.