## SIMPLEX PAPER BOX CORPORATION et al. v. ROSENTHAL PAPER CO.

### No. 11443.

Circuit Court of Appeals, Eighth Circuit.

Aug. 14, 1939.

Rehearing Denied Sept. 26, 1939.

Louis Prevost Whitaker, of New York City (Delos G. Haynes, of St. Louis, Mo., on the brief), for appellants.

James A. Carr, of St. Louis, Mo. (Joseph J. Gravely and William T. Brooking, Jr., both of St. Louis, Mo., on the brief), for appellee.

Before GARDNER and THOMAS, Circuit Judges, and WYMAN, District Judge.

THOMAS, Circuit Judge.

This is a patent infringement suit brought by the Simplex Paper Box Corporation, owner of the patents in suit, and Gercke-Allen Carton Company, a licensee, against Rosenthal Paper Company.

The three patents, and the claims of each involved, were issued to Ralph A. Gross and are as follows: No. 1,690,109, application filed November 4, 1926, granted November 6, 1928, for a collapsible paper box—claims 1, 2, 3, 4, 6, 7, 9, 10 and 11; No. 1,758,510, granted May 13, 1930, for paper box—claims 1, 2, 6, 8, 10 and 11; No. 1,940,213, granted December 19, 1933, for knockdown paper box with covers—claims 1, 2, and 3. The patents will be referred to in the order of their date of issue as first, second and third.

The defendant moved to dismiss the bill on the ground that the owner of the patents had on May 21, 1932, entered in the patent office an improper disclaimer to claims 3 and 4 of the first patent rendering the whole patent invalid, and that the second and third patents are invalid for want of invention. Defendant also answered denying the validity of the patents and filed a counterclaim praying for a declaratory judgment declaring non-infringement and for an injunction.

At the conclusion of the trial the court entered a decree overruling defendant's motion, dismissing its counterclaim, and dismissing the bill of complaint. The court's findings of fact, conclusions of law and opinion disclose that the court

dismissed the bill on the ground that the patents are invalid for the reason that they embody only an aggregation of elements disclosed in the prior art.

The defendant has not appealed from the rulings adverse to its contentions. The court found that the boxes manufactured and sold by the defendant embody all the essential features of all the patents in suit, and that finding is not controverted. The only question presented on plaintiffs' appeal is the validity of the patents in suit.

It is the contention of appellants that the combination of elements described in the several claims of the patents cooperate to form new combinations, producing new and useful results, not anticipated in the prior art; and that the combinations are not mere aggregations, but that they involve invention and constitute distinct advances in the art of making paper boxes. These contentions as to the validity of the patents are supported by adjudications in Simplex Paper Box Corporation v. Blum Folding Paper Box Co., D.C.N.Y., and Simplex Paper Box Corporation v. Acme Paper Box and Case Co., D.C.Ill.[1]

As already indicated the patents relate to paper boxes. Such boxes are used extensively in commerce as containers of merchandise. They are divided into two general classes, set-up boxes and folding or knockdown boxes, each of which has its peculiar advantages. The patents cover folding or knockdown boxes only. Their principal advantages are that they may be shipped flat, made cheaply and erected and locked in set-up form at the place of use.

Paper boxes may be further divided into two classes according to the nature of the cover. The first is known as the telescope type and consists of a box proper and a separate lid or cover of the same form which fits over it. In the second type the cover is an integral part of the box, usually consisting of an extension of one of the side members. The first and second patents are concerned with boxes of the telescope type and the third with the integral cover type.

The art of making knockdown paper boxes was an old and crowded field when Gross entered it. His patents are for improvements. The problem which he sought to solve was the production of a box which could not only be shipped flat, but one which could be instantly erected into and locked in contents receiving position by the hands of the operator without the aid of any machinery or mechanical appliances, and which when so erected would have the stiff and rugged qualities of a set-up box.

The distinctive features of the first patent are concerned (1) with the means adopted for instantly erecting the box from a flat to a receiving position and (2) with the locking device. These points are made apparent by a description of the method of making the patented box.

The first step in the process is to mark off by scoring or creasing on a blank cardboard the pattern for a box of the desired dimensions. The design shows the bottom and side and end walls of the proposed box. The walls are represented on the plan by two strips (referred to in the claims as flaps) parallel to the sides and ends of the bottom. The strip adjacent to the bottom becomes the outer wall and is as wide as the box will be deep. The outer strip becomes the inner wall and is as much narrower than the inner strip as the cardboard is thick. At the corners the cardboard adjacent to the outer strips is cut entirely away while that part adjacent to and integral with the inner strips is trimmed slightly and scored diagonally from the corner of the bottom of the box outwardly.

When folded at the creases the flat cardboard will assume the shape of a box. The inner strips adjacent to the bottom become side and end walls. The outer strips fold inside the outer walls giving the walls a double thickness. The diagonally creased paper at the corners folds inwardly, bellows like, is positioned between the outer and inner end walls and is integral with the outer walls. The box when thus folded is held in position by the locking device, which is made by cutting away a portion of the ends of the inner sidewalls approximately equal to the thickness of the cardboard and by attaching a projecting plate to the inner end walls. Instead of using a plate the inner end walls may be cut slightly longer than the outer end walls. When the inner end walls, called the locking flaps, are folded into position the projections at their ends will engage the opening left by cutting away a part of the ends of the side walls and the box will be locked in position.

---

[1] No opinion for publication.

In manufacturing, the creased blank is assembled by folding and gluing the inner side walls to the outer side walls and then folding the double side walls upon the bottom bringing the creased corner sections upon the outer end walls. The triangular part of the corner section integrally adjacent to the outer end wall is fastened thereto by gluing, stapling or otherwise, and the locking flaps (or inner end walls) are folded over them. In this form the blanks are flat and may be laid one upon another to be packed and shipped.

When needed for use the operator raises the end walls, and by reason of the connection between the sides and end walls through the infolding triangular corner sections the side walls are automatically raised into position. The locking end flaps are then folded into position and the box is complete. When the box is thus set up the infolded corner sections provide a strut to prevent the outward movement of the side walls when the box is filled. In this way the infolded corners cooperate with the locking device by preventing the projections on the end locking flaps from slipping out of the recesses provided for them at the ends of the inner side walls.

The distinctive feature of the second patent is an auxiliary locking device added to the locking device of the first patent. It was found that the lock under the first patent could be released by drawing inwardly the central portion of the lower edge of the inturned locking flaps. This movement shortened the distance between its end edges and withdrew them from the locking engagement with the recesses formed at the ends of the inner side walls. The object of the second patent is to eliminate such a possibility. This is accomplished by creasing a third narrow strip on the blank form adjacent to the second or outer strips employed in the first patent. When the parts of the box are folded into position the narrower strips lie upon the bottom adjacent to the side and end walls. They are bevelled or mitred at the corners of the box so that the end strip engages and cooperates with the side strip. By this means the locking flaps are stiffened and held in position and they cannot be pulled inward at the bottom without first releasing the narrow end strips on the bottom from their engagement with the corresponding side strips.

The third patent is an adaptation of the infolded corner sections and the lock-

ing means of the first and second patents to a paper box not having double side walls and having a cover formed integrally with one of the side walls. The infolded corner sections are the same and perform the same functions as in the first and second patents. The locking device is achieved by means of the end sections, "said end sections being provided at their outer ends with end locking sections hinged thereto, and foldable over said infolding corner sections, said locking sections being each provided at its outer edge with a bottom engaging locking section of slightly greater width than the bottom section, and providing end wedge portions for effecting a frictional and wedging engagement with the opposite side section adjacent to the union of said side sections with the bottom section." The method of erecting the box is the same as in the first and second patents.

The claims of the patents in suit cover the features of the patented boxes described above. The trial court found that "The constructions of one or more or of all three of the patents in suit are capable of use in a single box."

All the essential elements of the three patents are found in collapsible or folding paper boxes patented earlier than appellants' devices were patented. The question for consideration, therefore, is whether the combination of these elements in the patents in suit involves patentable invention or whether the combination is a mere aggregation of elements.

A new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. The new and useful result must be the joint product of the elements of the combination. Hailes v. Van Wormer, 87 U.S. 353, 20 Wall. 353, 368, 22 L.Ed. 241; Toledo Pressed Steel Co. v. Standard Parts, Inc., 59 S.Ct. 897, 83 L.Ed. —— decided May 29, 1939. The use of an old method to produce an old result is not invention. Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 473, 55 S.Ct. 449, 79 L.Ed. 997; Electric Cable Joint Co. v. Edison Co., 292 U.S. 69, 80, 54 S.Ct. 586, 78 L.Ed. 1131. A mere aggregate of results, each the result of one of the combined elements, is not invention, even though the result marks an advance in efficiency and utility. In such

case it is only an exercise of mechanical skill and not invention. Hailes v. Van Wormer, supra; Altoona Publix Theatres v. Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005.

Both distinctive features of the first patent are stated in claim 1, which reads as follows:

"1. A knockdown box comprising a blank, having a body portion, side flaps, end flaps, locking flaps connected to the outer edges of the end flaps and adapted to fold upon the same, [1] and connections between the side flaps and end flaps for raising the side flaps into and holding them in operative position when the end flaps are raised, [2] the inner faces of the side flaps and the opposite ends of the locking flaps being provided with portions adapted to interlock automatically by the folding of the locking flaps upon the end flaps when the latter are in raised position to hold the box in operative position."

The raising and holding of the side walls in operative position described in clause [1] of the claim is a function of the diagonally folded corner sections. This same device performing the same function is found in the Thiolat (French) patent No. 501,056, issued January 15, 1920; in Blake (British) No. 9693, issued March 23, 1895; in Miller No. 1,699,008, application filed August 16, 1926, granted January 15, 1929; and the device is disclosed in several other earlier patents.

The clause marked [2] in the claim describes the locking device. The principle of this device is found in Walker No. 770,-946, September 27, 1904, and in Hirsch No. 748,376, December 29, 1903.

The claims of the second patent provide for a "supplemental locking member", which consists of an end flap integral with the locking flap of the first patent. When in operative position the end flap rests upon the bottom of the box and its mitred ends engage similar mitred side flaps which also rest upon the bottom of the box. Its function is to reinforce the locking flaps or inner end walls to prevent the disengagement of the locking means by some inward pull of the lower edge of the locking flap when the box is in operative position. This device is found, not as an auxiliary but as a principal locking means in Helfrich No. 1,498,375 (1924); in Krebs (Canadian) No. 200,682 (1920); and as a supplemental locking means in Miller where the result is accomplished by raised abutments on the bottom of the box near the ends. In the Miller patent the abutments engage short extensions of the locking flaps and assist in preventing their release from frictional engagement with the side walls.

The locking device employed in the third patent in suit depends upon the frictional engagement of the locking flap with the sides of the box. It is substantially the same as the frictional lock disclosed by Miller.

▮ The three patents depend for their validity upon a finding that the combination of elements old in the art operates to produce new and useful results never before attained. This fact has not been demonstrated. No doubt plaintiff's first patent is an improvement over Walker and Hirsch. The substantial difference lies in the corner sections. The earlier patents disclose corner sections adjacent to the side walls but cut away from the end walls. In operative position the side walls are raised and the corners are folded at right angles. The end locking flaps fold over them and interlock with the inner side walls as in plaintiff's patent. The downward force of the locking flap against the upper edges of the corners is the only means of holding the side walls in position. These may have a tendency to spread apart and release the end locks. Plaintiff has avoided this difficulty by the use of the infolding triangular corners found in Thiolat, Blake and Miller. Besides raising the sidewalls automatically when the end walls are raised the triangular corners act as a truss to maintain them firmly in position when locked between the inner and outer end walls. The infolding corners thus cooperate with the locking device by preventing its becoming released by the outward spread of the side walls. This use of the infolded corners was not new, however. The same use for the same purpose is disclosed by Miller. In Miller the truss like action of the infolding corners was utilized to cooperate with the frictional lock of the inner end wall when wedged between the sides of the box. Without this property of the infolding corners the frictional element of Miller's end lock would have been practically useless.

To cooperate with the frictional lock Miller added a bottom engaging lock substantially similar in purpose to the mitred ends of the bottom lock in plaintiff's sec-

ond patent. The sole improvement over Miller in either plaintiff's first or second patent is the addition of the corner locks found in Walker and Hirsch. But it cannot be said that this constituted invention. To see that the addition of a side engaging section with the end flaps would hold Miller's frictional lock more firmly in place was but the exercise of mechanical skill. Such an addition would of course leave the end flaps no longer dependent upon frictional engagement with the sides for their locking properties but the result can not be said to constitute invention.

Thus it is seen that each element of the combinations in the three patents is found in the prior art, and in each case the borrowed element performs the same function and produces the same result which it performed and produced in the box in which it was originally used. The total result appears to mark an advance in efficiency and utility over the old art, but such advance in our opinion is no more than an exercise of mechanical skill, and not invention. Altoona Publix Theatres v. Tri-Ergon Corp., supra; L. Sonneborn Sons, Inc., v. Coe, 70 App.D.C. 97, 104 F.2d 230, 233. The combination is a mere aggregation of old devices, and does not involve invention or discovery. Toledo Pressed Steel Co. v. Standard Parts, Inc., supra; Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 550, 58 S.Ct. 662, 82 L.Ed. 1008; Lunati v. Barrett, 6 Cir., 104 F.2d 313, 315.

As favoring invention appellants direct attention to the presumption of invention arising from the grant of the patents; from commercial success; from the fact there are ten licensees producing and selling the patented boxes; and from the adjudications of the district courts of New York and Illinois. This array of favorable evidence is impressive but not convincing upon the record before us. For a new combination of old elements to be patentable there must be invention in the thought of combining them, Lunati v. Barrett, supra; and, unless the question of invention is a doubtful one, commercial success and need in the industry may not be considered as evidence of invention. L. Sonneborn Sons, Inc., v. Coe, supra; De Forest Radio Co. v. General Electric Co., 283 U.S. 664, 685, 51 S.Ct. 563, 75 L.Ed. 1339. We hold that the three patents in suit are invalid for want of invention.

Affirmed.