## HAZELTINE CORPORATION v. EMERSON TELEVISION–RADIO, Inc., et al.

District Court, S. D. New York.

Oct. 6, 1941.

Pennie, Davis, Marvin & Edmonds, of New York City (R. Morton Adams and L. B. Dodds, both of New York City, of counsel), for plaintiff.

Darby & Darby, of New York City (Samuel E. Darby, Jr., and Floyd H. Crews, both of New York City, of counsel), for defendants.

NEVIN, District Judge (sitting by designation).

This is an action for patent infringement brought by Hazeltine Corporation (a Delaware corporation) against Emerson Television-Radio, Inc., Emerson Radio and Phonograph Corp. and Benjamin Abrams, because of the manufacture and sale of certain radio receivers.

The patent in suit (it is stipulated) is owned by plaintiff. It is Number 1,710,035 issued to Roy E. Thompson, April 23, 1929, on application filed March 13, 1926. On October 22, 1931, patentee filed certain disclaimers as to Claims 1 and 5. (Official Gazette November 17, 1931).

The patent is for a "Sound-Reproducing Instrument." It contains 12 claims. Of these (S.M. P.9) Claims 1, 3, 5, 6, 7 and 8 are here relied upon. Claims 5 and 7 are asserted as typical.

Plaintiff filed its complaint on August 15, 1934. Defendants filed their answer on September 14, 1934, and an amendment thereto on February 27, 1941. Defendants deny infringement and allege that the patent is invalid for lack of invention in view of certain prior patents and publications referred to and for other reasons set forth in their answer. Defendants assert further that upon the grounds set forth in their amendment plaintiff is estopped "(a) To assert that the claims of the patent cover a radio receiver in a cabinet; (b) To assert claims 1, 2, 5 and 7 to be valid; and (c) To assert that Thompson, the patentee, was the first inventor of claims 1 and 5, or any other claims commensurate therewith."

The cause came on for hearing on the pleadings and the evidence on February 25 to 28, inclusive, 1941. Subsequently, briefs were filed and the cause argued orally.

In January, 1941, the parties entered into a stipulation as to "Certain Facts", thereby eliminating any controversy with respect to certain questions. Thus it was agreed that the relationship between defendant Abrams and the other defendants, and his liability for any acts complained of, should be reserved for trial as a separate issue, or in an accounting that may be ordered herein, and that the apparatus charged to infringe comprises radio receivers manufactured and sold by the Emerson companies of which Model 31AW (Exh. 2), Model 250LW (Exh. 3), Model

375LW (Exh. 4) and Model 38 (Exh. 5) have been selected as typical and are relied on for the purposes of trial.

The stipulation covers also the following, to-wit: plaintiff's ownership of the patent in suit since December 29, 1930; notice of infringement to defendant on August 15, 1934; and defendants' manufacture and sale of the accused receivers after the cancellation of defendants' license from Hazeltine Corporation and prior to the filing of the complaint herein on August 15, 1934, and thereafter. Other facts covered by the stipulation will be referred to in the Findings of Fact hereinafter set forth.

Claims Nos. 5 and 7, submitted as typical, read as follows: "5. The combination of a large conical diaphragm, with a casing open at opposite ends disposed about the edge of said diaphragm and providing an open sound chamber at the rear of said diaphragm serving to enhance the operation thereof throughout its frequency range." "7. The combination of support, a diaphragm carried thereby, and apparatus for actuating said diaphragm carried by said support, with a cabinet having an opening therein to permit of the reception of said support and the parts thereon within the cabinet, and having an opening therein adapted to register with said diaphragm."

Throughout the trial and briefs much stress was placed on the claim of invalidity —including that allegedly caused by an (alleged) invalid disclaimer and "for unreasonable delay in disclaiming claims, the invalidity of which had been known and acknowledged by the patentee."

In view of its conclusion, it is unnecessary for the court to discuss or determine these questions. From a study of the record, the exhibits and arguments, the court .concludes that defendants' apparatus here accused does not infringe the patent in suit. Having reached that conclusion, no need exists to pass on the question of validity—solely for the purposes of this case validity may be assumed. Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 243, 59 S.Ct. 860, 83 L.Ed. 1263; Vibroplex Co. v. J. H. Bunnell & Co., 2 Cir., 16 F.2d 975, 976; Edwards Mfg. Co. v. National Fireworks Dist. Co., 6 Cir., 272 F. 23, 27; Heimlich v. Model Brassiere Co., D.C., 28 F.2d 541, 542; Harris v. Ladd, 8 Cir., 34 F.2d 761, 764.

Nor would any useful purpose be served in a recital of the facts further than as set forth in the Findings of Fact herein. As stated by the court in Penmac Corporation v. Esterbrook Steel Pen Mfg. Co., D.C., 27 F.Supp. 86, at page 87, "it is now a work of supererogation to write a considered and detailed opinion on the facts in what used to be an equity cause and is now called a non-jury cause, for the place of the opinion must now be taken by formal findings of fact and conclusions of law, separately stated and numbered. Title 28 United States Code, Section 723, 28 U. S.C.A. § 723."

However, as a matter of information and for future reference, should occasion arise, it may not be amiss to state as briefly and succinctly as may be the claims of the parties hereto as asserted by them respectively.

Plaintiff submits that "The Thompson invention in its specific and preferred form comprises a structure for improving the acoustic properties of a radio receiver, for increasing its compactness, for reducing its cost and for simplifying its manufacturing and assembling operations. This structure comprises a unitary receiver chassis in which a loud speaker of the large diaphragm type and a radio actuating means are combined into an electrically operative unit which is inserted as a unit into a cabinet of special construction such that the direct-acting diaphragm registers with an opening in the front wall of the cabinet and is in effective contact therewith, and also such that the cabinet has acoustically closed sides but open back whereby the cabinet serves as a folded-back baffle of effective dimensions greater than the cabinet front wall and whereby the cabinet also serves as a sound chamber, thus enhancing the tone characteristic of the radio receiver throughout its tone range (see Farrand, R. 57–62; 67–74). The Thompson invention resides in the combination of these elements, the elements themselves being individually old. And plaintiff urges that it is apparent "upon mere inspection of defendants' apparatus and comparison of it with the disclosure of the Thompson patent and with the Thompson Minuet receiver, Exhibit 7, that the defendants have embodied in their receivers the same essential structure as that invented by Thompson. The defendants in this apparatus utilize the large diaphragm type of sound reproducer and they com-

bine this with the radio receiving apparatus to form a unitary chassis which is completely assembled, wired and tested as a unit and which is then inserted into its co-operating cabinet. Defendants have also employed the particular cabinet structure called for by Thompson, namely, one in which there is an opening in the front face which registers with the periphery of the cone type loudspeaker to secure baffle action and in which the side walls are solid so as to increase the baffle action and so as to produce the sound chamber effect. Also, defendants have left the back of the cabinet open except for the perforated back cover which is sufficiently open to permit free passage of the sound waves and which is removable to permit the insertion of the chassis."

In answer to the foregoing claims of plaintiff, defendants assert that: "1. The claims of the patent in suit are restricted to a loud speaker in a box, and are not directed to a radio receiver in a box, which is the structure accused of infringement. This was held by the Patent Office in the abandoned reissue application and was argued at length throughout these proceedings. 2. Furthermore, the claims sued on are specifically limited to details which are not present in the accused sets. (a) The first of these is that claims 1, 3 and 5 require a 'large' diaphragm, which the accused sets do not have (R. 240). Plaintiff's expert, without the slightest factual support, and in contradiction to the Thompson patent, was put to the necessity of manufacturing a definition for a 'large' diaphragm, which he later was forced to admit would include the smallest diaphragm he had ever seen (R. 318), viz.: a diaphragm of about one inch in diameter (see Defendant's Exhibit B). The utter absurdity of this testimony, which bordered on stultification, made necessary to present even a colorable case of infringement, is believed to be self evident. Defendant uses a diaphragm which is only 4⅞ inches in diameter, whereas the teachings in the art at the time of Thompson required a 'large' diaphragm to be in excess of 9 inches. In fact, plaintiff's expert, Farrand, was a stockholder and director in the Lektophone Company (R. 108) which attempted to, and for many years did, dominate and levy tribute from the radio industry under Hopkins Patent No. 1,271,-529 (Tab 2, Exhibit F), on the theory that there is a sharp line·of demarcation at 9 inches between a 'small' and a 'large' dia-phragm (Lektophone v. Rola [9 Cir.]·34 F. 2d 764, and the Lektophone cases cited therein).

"(b) Claims 1, 3, 5 and 6 further require that the casing be 'disposed about the edge of said diaphragm'. An examination of the drawings of the Thompson patent, or of the commercial model from which the drawings were made (Plaintiff's Exhibit 7) shows precisely what is meant by this language. The apex of the conical diaphragm is extended completely through and a substantial distance beyond the front of the cabinet so that the cabinet is literally 'disposed about the edge of the diaphragm'. The Emerson receivers employ no such arrangement. The apex of the Emerson conical diaphragms point inwardly from within the front of the cabinet, and the periphery thereof is behind the front wall of the cabinet. In other words, the Emerson conical diaphragms are, in their entireties, located within the cabinet; there is no portion thereof as to which the orifice in the front wall of the cabinet is 'disposed about' it. The front wall of the cabinet is in front of—not 'disposed about'—every part of the Emerson diaphragm (R. 240). Obviously, therefore, there is no infringement of these claims by the Emerson receiver.

"(c) Claims 1, 3 and 5 further require a 'sound chamber'. Defendant does not have a 'sound chamber' (Kelley, R. 240). * * * The Thompson specifications and claims (e. g. claim 5) make it perfectly clear that it was a special type of 'sound chamber' that Thompson had in mind, viz.: one of such size, shape and dimensions (as to which the specification is entirely silent, and plaintiff's expert Farrand could give no information) that would enhance the operation of the loud speaker 'throughout its frequency range'—a physical and scientific impossibility. Obviously, therefore, the Emerson receivers do not employ the 'sound chamber' of the Thompson patent.

"(d) Claims 1, 3 and 5 specifically include as a limitation that the 'sound chamber' enhances the operation of the loud speaker diaphragm 'throughout its frequency range'. As stated, this is a physical impossibility (Kelley, R. 240). In fact, it was acknowledged by Thompson, the patentee, under oath, in his abandoned reissue application, to be an impossibility, and to constitute such an inaccuracy as to require a reissue of the patent (Ex-

hibit E, p. 20). It was also admitted by plaintiff's expert (R. 111-115).

"(e) Claims 3 and 5 further require an 'open' sound chamber, which, of course, is not present in the accused structures since there is no 'sound chamber' (as defined by Thompson) present in any of them (R. 241).

"(f) Claims 6 and 8 further call for a 'reticulated' member across the opening at the rear of the cabinet. This, in the patent in suit (and in Plaintiff's Exhibit 7), is the wire mesh screen, the purpose and function of which is to make the alleged Thompson 'sound chamber' acoustically 'open' at its rear, while preventing accidental access into the cabinet. The Emerson receivers use no such structure. Not employing the Thompson 'sound chamber', the Emerson receivers employ a permanent closure for the back (screwed to the back and removable only for repair and replacement), with orifices solely for the purpose of dissipation of heat. In no sense is it a 'reticulated' member (Kelley, R. 241).

"From the foregoing it will be seen that each of the claims in suit of the Thompson patent, by express limitation and necessary implication, is limited to a number of details, none of which is employed in the Emerson receivers. Obviously, therefore, there is no infringement."

Shortly after the oral argument, to-wit: on July 26, 1941, a stipulation between the parties was filed, reading as follows: "Now come defendants by their attorneys, pursuant to the discussion at the oral argument of this cause, and state that claim 7 of Thompson patent No. 1,-710,035, if valid, reads literally on the radio sets accused of infringement in this case."

As heretofore set out, plaintiff concedes (Br. P. 3) that the Thompson invention resides in a combination of elements and that these elements themselves are "individually old". What plaintiff claims is that Thompson created a new combination of these individually old elements and plaintiff submits that it has pointed out (at the trial and in its briefs) "the differences between Thompson's structure and the structures of the prior art and we show that defendants have followed Thompson by employing those differences —namely, the unitary structure and the cabinet with closed sides and open back.

Claim 7 is directed to both of these features."

As to this, defendants urge that "a mere examination of the claims, however, reveals that the alleged combination claimed thereby was so obviously a matter of choice or design of any competent engineer as to be wholly wanting of any inventive ingenuity or patentable subject matter.

"First, taking typical claim 7 as an illustration, the individually old elements of the combination are (1) a support; (2) a diaphragm carried by the support; (3) an apparatus for actuating the diaphragm carried by the support; (4) a cabinet having an opening to permit the reception of the support and the parts thereon within the cabinet, the cabinet being provided with an opening to register with the diaphragm.

"From this analysis of the claim it will be seen that all that the claim purports to cover is a loud speaker in a cabinet—an obviously unpatentable thing."

Defendants submit that Claim 7 merely calls for an aggregation that reads on all radios; that "it is obvious that if plaintiff's position in this case is sustained no radio set may be made in this country without paying tribute to the patent in suit."

And they say that while they admit that this claim (7), if valid, reads literally on the radio sets accused of infringement, nevertheless, they "deny that it is infringed on the ground that it is not entitled to be read literally."

In support of this position, defendants assert that "the accused structure is identical with the prior art, and that since the patent must be for something different from the prior art, it therefore cannot be infringed by the accused structure." Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 568, 18 S.Ct. 707, 42 L.Ed. 1136; Tostevin-Cottie Mfg. Co. v. M. Ettinger Co., 2 Cir., 254 F. 434, 435.

Plaintiff (R. Br. P.1) "agrees that the Court should not confine itself to the literalism of claim language", but the court should, it submits, "consider the substance of the Thompson invention and to that end should compare his disclosed structure with the prior art structures to determine the advance that he made and then determine whether defendants have appropriated this advance", it being plaintiff's contention "that such a factual comparison will show that defendants have

gone beyond the prior art and have appropriated the features which distinguish Thompson as an inventive advance beyond the prior art."

It is conceded that for a new combination of old elements to be patentable, there must be invention in the thought of combining them. In Lunati v. Barrett, 6 Cir., 104 F.2d 313, at pages 314, 315, the court say: "While we recognize that the patent is for a combination, and that the combination may be new, even though its elements be old, yet to be patentable there must be invention in the thought of combining them * * *."

It is further agreed that a patent may validly cover only the difference between what is disclosed in the patent and what is disclosed in the prior art.

The court is of opinion that in the instant case the accused structures are identical with the prior art; that claim 7, assuming it to be valid, must be interpreted to define something different from the prior art, and, therefore, different from the accused structures, and, as heretofore indicated, it agrees with the conclusion of defendants, above expressed, that upon the record in the instant case "there is no infringement".

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the court has arrived at the following:

### Findings of Fact.

1. Plaintiff is a corporation of the State of Delaware, and is now, and, since December 29, 1930, has been the owner of Thompson Patent No. 1,710,035, here in suit.

2. Defendant, Emerson Television-Radio, Inc., a New York corporation, manufactured the radio sets alleged to infringe the Thompson patent.

3. Defendant, Emerson Radio & Phonograph Corporation, a New York corporation, sold the radio sets alleged to infringe the Thompson patent.

4. Defendant, Benjamin Abrams, was made a party to the suit by reason of an alleged connection with the other defendants. It was stipulated that evidence of the relationship between him and the other defendants, and his liability for any acts complained of, should be reserved for trial as a separate issue, or in an accounting that may be ordered herein, or otherwise as the court may direct after decision on validity and infringement.[1]

5. Plaintiff charges infringement of claims 1, 3, 5, 6, 7 and 8 of the patent. Of these claims plaintiff has selected claims 5 and 7 as typical.

6. The radio sets charged to infringe the patent in suit are Emerson Models 31-AW (Ex. 2), 250-LW (Ex. 3), 375-LW (Ex. 4), and 38 (Ex. 5).

7. On August 15, 1934 defendants received notice of infringement of the patent in suit.[1] The complaint in this case was filed on the same day, to-wit: August 15, 1934.

8. Plaintiff is not a manufacturer of radio receivers, but through a subsidiary, is engaged in research and development work in the radio communication field, and owns or has the right to grant licenses under more than four hundred United States patents; it derives its sole revenue from royalties received from licensees under its patents resulting from such research and development work, and from engineering services for its licensees; under plaintiff's license agreements the licensees pay the same amount of royalties for the use of any one or more of its patents in any particular radio receiver, regardless of how many such patents may be used.[1]

9. Defendant Emerson companies are licensed by the Radio Corporation of America under all of the radio patents under which that company is authorized to grant licenses in the radio field, including those owned by the Radio Corporation of America, American Telephone & Telegraph Company, Westinghouse Electric & Mfg. Co., General Electric Company, Western Electric Company, and Bell Telephone Laboratories; included among the patents under which the defendant Emerson companies are licensed by the Radio Corporation of America are the following patents in evidence in this case:[1]

| [1] Agreed to by stipulation, Ex. 6 Id. | | | |
|---|---|---|---|
| Harrison | 1,613,609 | Fisher | 1,759,610 |
| Rice | 1,631,646 | Minton | 1,861,222 |
| Burch | 1,671,509 | Frederick | 1,955,800 |
| Wegel | 1,704,354 | Keller | 1,884,724 |

10. The disclosures of the applications for each of the following patents, as filed in the Patent Office, is the same in all respects material to the present suit as the disclosure of the corresponding patent as issued:[2]

11. The patent is suit does not disclose any new instrumentalities. All of the elements disclosed are individually old.

12. The patent in suit discloses, and claims a loudspeaker for a radio receiver placed within a cabinet, and with the loudspeaker diaphragm and its driving mechanism mounted on a common support.

13. The patent in suit has made no contribution to lowered costs of producing radio sets, or to the production of radio sets by mass production methods.

14. The references in the patent in suit, both in the specification and in the claims, to a large diaphragm, mean a diaphragm in excess of nine (9) inches.

15. The type of loudspeaker diaphragm almost universally in use today is the dynamic type as distinguished from the magnetic type which was the type disclosed and used by Thompson. A dynamic type of loudspeaker is normally much smaller than a magnetic type. A dynamic type of loudspeaker requires a baffle in order to operate properly. The use of baffles concededly preceded Thompson.

16. The accused sets all employ a dynamic type of loudspeaker, with the cabinet acting as a baffle.

17. The accused sets employ a loud speaker diaphragm which is materially smaller than 9 inches in diameter. They are not large diaphragms, as specified by the Thompson patent.

18. The accused sets do not employ a sound chamber of the type specified by the Thompson patent, which is capable of producing, or in fact produces, the sound chamber effect of the patent.

19. The accused sets do not utilize any invention (if such there be) defined in any of the claims in suit of the Thompson patent.

### Conclusions of Law.

1. The accused devices herein referred to do not infringe the claims in suit of patent No. 1,710,035.

2. It is unnecessary for the court to, and it does not, pass on the question of the validity of the patent in suit.

3. Defendants' prayer that they may be dismissed with their costs is granted.

Judgment accordingly. Settle judgment before the Clerk on usual notice.