## AMERICAN SEATING CO. v. IDEAL SEATING CO.

### No. 8710.

Circuit Court of Appeals, Sixth Circuit.

Dec. 9, 1941.

William C. Rice, of Grand Rapids, Mich. (Rice & Rice, of Grand Rapids, Mich., on the brief), for appellant.

Lloyd C. Root, of Grand Rapids, Mich. (Frank E. Liverance, Jr., of Grand Rapids, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and McALLISTER, Circuit Judges.

---

SIMONS, Circuit Judge.

The patent, the validity of which and an asserted breadth of its claims are sought to be vindicated in the present suit, is one to Nordmark, No. 2,046,649, granted July 7, 1936, upon an application filed May 3, 1935. It is for a chair, particularly of the type used in theaters, and its object is to provide one having an improved back and improved means for mounting the back on its support. Claims 1-4 inclusive, printed in the margin,[1] are in suit. The court below, assuming them to be valid, construed them as limited in scope in the light of the prior art, and so entitled to but a narrow range of equivalents. Interpreting them strictly, it perceived no infringement in the assailed structures of the defendant, and dismissed the bill of the appellant for want of equity.

It requires no historical review of the art to demonstrate its antiquity, either generically considered or in its more specific aspect in relation to theater seating, nor will a marshaling of patents and prior uses be needed to indicate its expected and actual crowding, even though it be assumed that there was left some room for invention.

The disclosures of the patent relate particularly to a chair back which, as illustrated and described, comprises a rear panel to the front of which is connected an upholstery unit. This consists of a second panel covered on its front side with an upholstery sheet and padding, the edge portions of the upholstery being turned around the edges of the panel and permanently secured to its rear face. The rear panel has screws passing forwardly through it into the front upholstery panel, and a decorative metal rim, of channel shape, covers and embraces its upper and side edges, being secured in place by one of two alternative specific means.

Since the appellant concedes, both in brief and argument, that it was not novel for the inventor to cover the raw edges of a sheet of upholstery turned over the periphery of one panel at its juxtaposition with another panel; that it was not novel to provide a panel having a decorative and protective rim secured to its periphery, as shown in its own prior Nuberg patent No.

---

[1] 1. In a chair back: Comparatively rigid forward and rearward sheet members forming the frame of the back; retaining elements held between said members adjacent the parallel edges thereof having forwardly extending lugs; a rim extending around the edge of the rearward member and turned over the front side thereof into engagement with the inner side of said elements; an upholstery sheet in front of the forward member having its edge portion turned over the edge thereof and between said members; means for fastening said members together with the edge portion of the upholstery sheet clamped between them.

2. In a chair back: comparatively rigid forward and rearward sheet members forming the frame of the back; retaining elements held between said members adjacent the parallel edges thereof having forwardly extending lugs; a rim extending around the edge of the rearward member and turned over the front side thereof into engagement with the inner side of said elements and having a flange engaging the rear side of the rearward member; an upholstery sheet in front of the forward member having its edge portion turned over the edge thereof and between said members; means for fastening said members together with the edge portion of the upholstery sheet clamped between them.

3. In a chair back: comparatively rigid forward and rearward sheet members forming the frame of the back one of said members having sockets in its inner side; retaining elements seated in the sockets having forwardly extending lugs; a rim extending around the edge of the rearward member and turned over the front side thereof into engagement with the inner side of said elements; an upholstery sheet in front of the forward member having its edge portion turned over the edge thereof and between said members; means for fastening said members together with the edge portion of the upholstery sheet clamped between them.

4. In a chair back: comparatively rigid forward and rearward sheet members forming the frame of the back one of said members having sockets in its inner side; retaining elements seated in the sockets having forwardly extending lugs; a rim extending around the edge of the rearward member and turned over the front side thereof into engagement with the inner side of said elements; an upholstery sheet in front of the forward member having its edge portion turned over the edge thereof and between the retaining elements and the inner side of the forward member; means for fastening the retaining elements on the inner side of the forward member with the edge portion of the upholstery sheet held therebetween; means for fastening said members together with the edge portion of the upholstery sheet clamped between them.

1,800,097; and that there would be no valid patentable combination in uniting the two structures, the inventive concept must reside in the specific means by which the elements are united and the retaining devices secured and held in place between the two panels in their assembled relation. It must also be clear that the patentee may escape the charge of aggregation only by demonstration that the two panels function cooperatively in combination to prevent removal of the finishing rim when the three elements are assembled.

The specific means disclosed by the patent for securing the elements of the device in assembled relation are, as claimed in Claims 3 and 4, retaining elements having forwardly extended lugs fitted in sockets on the inner side of the back panel. These sockets, as depicted in the drawings, are spaced a short distance from the edges of the back panel, and the retaining members have tongues extending forwardly to engage with one of the flanges of the rim. In the alternative construction covered by Claims 1 and 2, the retaining elements are permanently secured to the back of the front or upholstery panel, and their upper end portions are turned forwardly to engage with a curved or bead-like flange of the rim.

The defendant's accused chair back is likewise comprised of three elements, a front upholstery panel, a rear supporting panel and a peripheral metal rim. Its rim is, however, permanently and securely connected to the rear panel on its front face by prongs which penetrate the surface of the wood, and the upholstery unit is added merely to complete the chair. While it is attached to the rear or supporting panel, it performs no function in connecting or keeping secure the attachment of the rim to the rear panel. Upon removal of the upholstery unit in the defendant's structure, there still remains a complete combination of supporting back and decorative rim. The removal of the upholstery unit in the patented combination results in complete disassembly of its three elements, for the metal discs which secure the rim to the back panel are held in place only by frictional contact and by the upholstery unit.

■ We conceive the issue to be solely one of infringement. While the court assumed validity it did not adjudicate it and the defendant has not appealed. We therefore do not meet the question considered by us in Aluminum Co. of America v. Thompson Products, Inc., 6 Cir., 122 F.2d 796, decided October 9, 1941, in respect to the duty of the court to adjudicate the question of validity on behalf of one exonerated of infringement. Perhaps our statement in that case that we are compelled by the holding in Electrical Fittings Corp. et al. v. Thomas & Betts Co., 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263, to adjudicate validity in cases of non-infringement, was too broad. More matured consideration leads to the conclusion that we are not obliged to adjudicate validity in behalf of one not guilty of infringement who has appealed. The Betts case decides nothing more than that a Court of Appeals has jurisdiction to entertain an appeal from a decree determining validity but adjudicating lack of infringement, "not for the purpose of passing on the merits, but to direct the reformation of the decree." This recession from our broad phrasing in the Thompson Products case is not to be taken as indicating a view that in any aspect that case was wrongly decided.

■ Proceeding, then, to the issue of infringement, the present controversy calls for an application of the doctrine so clearly stated in D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 259 F. 236, at page 240, "where the claim defines an element in terms of its form, material, location or function, thereby apparently creating an express limitation, where that limitation pertains to the inventive step rather than to its mere environment, and where it imports a substantial function which the patentee considered of importance to his invention, the court cannot be permitted to say that other forms, which the inventor thus declared not equivalent to what he claimed as his invention, are nevertheless to be treated as equivalent, even though the court may conclude that his actual invention was of a scope which would have permitted the broader equivalency." This doctrine has been approved and applied by us in numerous cases including Hollingshead Co. v. Bassick Mfg. Co., 6 Cir., 73 F.2d 543, 548; Directoplate Corp. v. Donaldson Lithographing Co., 6 Cir., 51 F.2d 199; Dillon Pulley Co. v. McEachran, 6 Cir., 69 F.2d 144; and Valjean v. Perfection Stove Co., 6 Cir., 103 F.2d 60.

■■ It is clear to us, as it was to the District Judge, that in view of the prior art

only a narrow range of equivalents is permitted to fall within the scope of the claims in suit. The essence of the invention lies in the precise retaining means and in their positioning. The defendant has not appropriated such retaining means and has not similarly positioned those it has employed so there is no room for the expansion of the claims by construction to bring the defendant's means within their ambit, by the application of the doctrine of equivalency. Had the defendant perfected its seat earlier it could not have obtained a valid patent upon the entire structure because it is merely an aggregation and not a true combination, and so the appellant finds itself upon the horns of a dilemma. In order to demonstrate validity of its claims, even prima facie, it found itself obliged to urge, as against the charge of aggregation, that its upholstery unit enters into a cooperative functional relationship with the retaining elements which engage the rim, and that this relationship is destroyed when the upholstery unit is disconnected from the back panel. The court agreed. The upholstery unit of the defendant's structure enters into no cooperative relationship with other elements. This the court also found. True, it is, that the defendant's front panel is fastened to the supporting back, but it functions in place only as a cushion for the seat occupant. It has no other function. It is idle to argue that because the positioning of the defendant's upholstering unit prevents the removal of the finishing rim from its rear panel, it thereby performs some other function, such as hiding unsightly retaining elements or securing the rim. It must, of course, be removed to disassemble the device, but that is merely because it is in the way.

Finally, Claim 4 recites, "means for fastening the retaining elements on the inner side of the forward member." The defendant fastens the retaining elements to the front face of the rear member. It is therefore contended that this is a mere reversal of parts. However, the language of the claim is specific as to location and it is clear that it was drafted to embrace an alternative construction and that the patentee considered this precise form important to his invention. There was not a mere reversal of parts, Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 43, 50 S.Ct. 9, 74 L.Ed. 147. There was no infringement.

The decree below is affirmed.