908

Richard W. DAVIS et al., Plaintiffs,

v.

The BUCK–JACKSON CORPORATION et al., Defendants.

Civ. A. No. 4369.

United States District Court
E. D. South Carolina,
Florence Division.

Oct. 21, 1955.

J. Preston Swecker, Washington, D. C., and Suggs & McCutcheon, Conway, S. C., for plaintiff.

Franklin G. Burroughs, Conway, S. C., Harvey B. Jacobson, Washington, D. C., and John H. Lewis, Jr., Washington, D. C., for defendant.

HOFFMAN, District Judge.

Plaintiffs, Richard W. Davis and J. W. Clements, are respectively the patentee and licensee of Patent No. 2,176,622 issued to Davis on October 17, 1939, covering what is generally known as a "carpet golf course". An exclusive license having been granted to Clements for Horry County, South Carolina (in which county Myrtle Beach is located), plaintiffs allege infringement of the patent by defendants and request an accounting for damages. Defendants deny any act of infringement and also urge that the issued patent is invalid. While it is unnecessary to determine both issues presented by defendants in light of the Court's conclusions, counsel have requested the Court to deal with the alleged infringement and validity, to the end that an appeal will dispose of the merits of the case in its entirety.

The contended invention is characteristic of the average miniature golf course, consisting of nine or eighteen holes simulating a conventional golf course but laid out on a small space of

land. Players walk upon the course and seek to project the ball over the "carpet" surface into a cup. The detail of the patent is shown in Exhibits P–1, D–A and D–B. A mold frame of any selected shape is constructed above the level of the ground to permit drainage. Concrete is poured into the mold frame to the top surface, thus forming a solid base and a flat playing surface. A carpet covering of any suitable material is placed upon the top face of the base and *overlaps the upper edges of the mold frame supporting the concrete.* A railing, providing a guard about the playing surface to prevent the ball from rolling off the surface, is supported by the upper edges of the mold and rests upon the edges of the carpet, with the carpet fasteners concealed. The patent permits the carpet to be cemented to the surface but plaintiffs followed the practice of using glue or cement only around the cup and extreme ends of the carpet, thus allowing the marginal portion of the carpet to overlap the upper and outer edges of the mold frame where the carpet is nailed to the mold. In the event of any swelling or shrinking, this enabled the licensee to remove the nails and tighten the carpet, thus eliminating any wrinkles.

In the construction by defendants the methods are very similar along certain lines. The principal distinction appears to be that the carpet does *not* overlap the edges of the outer rail-supports and is cemented or glued to the entire surface but not over the mold form, thereby prohibiting the removal of any guard rail and the consequent tightening of the carpet. It follows that, under the Buck-Jackson construction, the only remedy in the event of excessive swelling or shrinking would be the removal of the carpet and replacement of same.

There is no material conflict in the testimony save as to one point. Plaintiffs contend that Buck-Jackson used cement or glue on the inside portion of the guard rail which, in effect, caused the guard rail to serve as a supplemental fastening for the carpet. Defendants insist that no glue was placed on the inside of the guard rail, although admitting that the cement was laid along and upon the entire playing surface and that the carpet was placed thereon. Some testimony was introduced by plaintiffs tending to show that, on the morning of the trial, the licensee had examined three holes of the Buck-Jackson course and had observed glue on the inside of the guard rail. The advantage obtained, according to plaintiffs, is that such a procedure tends to keep the carpet from turning up or curling up, thus it is urged that the guard rail is used by defendants as a supplemental fastening for the carpet. In the face of defendants' denial that the cement was used for this purpose, a fair inference from the evidence would lead to the conclusion that some cement undoubtedly did reach the inside guard rail in the course of spreading same on the top of the concrete, but that this was probably caused by swelling or careless application with no intent on the part of defendants to use the guard rail as a supplemental fastener in any manner.

It is essential to examine the "claim" under the Davis patent, same being:

"A golf course structure comprising a rigid, solid base including a boundary mold frame and a filling flush with the top edge portion of the frame, a characteristic carpet covering the top face of the base and extending marginally onto the top edge portion of the mold frame, said marginal portion of the carpet being fastened directly to the top of the mold frame, and *a separate guard rail secured to said mold frame on top of the attached marginal portion of the carpet and functioning as a supplemental fastening for the carpet*".

During the 1953 season defendants caused the carpet of one of the eighteen holes to be nailed to the mold form but, due to expansion and contraction of the carpet, this procedure was abandoned after one season in favor of gluing the carpet to the concrete base. From this

fact plaintiffs contend that defendants have used the guard rail as a supplemental fastener.

Plaintiffs insist that the use of some type of adhesive under the carpet secured the carpet in place and, in using the adhesive substance to the lateral edges of the carpet, it served to fasten the carpet adhesively to the inner faces of the guard rails, thereby constituting an infringement.

Additional factors for consideration are that the defendant, Jackson, had previously secured from Davis a license to operate a golf course under the Davis patent in Dare County, North Carolina; that a corporation in which Jackson has a fifty percent interest now holds a license under the patent for Morehead City, North Carolina; that the Davis patent has been licensed in all but two states east of the Mississippi River and in four or five states west of said River; and, for what it may be worth, that two *consent* decrees have been entered allowing small amounts by way of damages for infringement. The fact that consent decrees by way of settlement have been effected in these two cases is of little moment as the Court recognizes the expense of litigation in such matters, all of which tends to promote settlements. In a preliminary motion plaintiffs asserted that defendants were estopped to deny the validity of the patent because of prior recognition in North Carolina, but District Judge Williams determined this issue adversely to plaintiffs.

██ It is well settled that courts must scrutinize the "claim" as allowed by the Patent Office to determine the nature of the invention, which should be read in light of the specification and drawings, and that courts have no right to enlarge a patent beyond the scope of its claim. Keystone Bridge Co. v. Phoenix Iron Co., 95 U.S. 274, 279, 24 L.Ed. 344; National Machine Corp. v. Benthall Machine Co., 4 Cir., 241 F. 72; Wire Wheel Corp., etc. v. Budd Wheel Co., 4 Cir., 288 F. 308; Motion. Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 37 S.Ct. 416, 67 L.Ed. 871; Victor Cooler Door Co. v. Jamison Cold Storage Door Co., 4 Cir., 44 F.2d 288. The "claim" must also be construed in the light of the prior art and a mere improvement in a crowded art is not entitled to a liberal construction even though the patent may have met with commercial success. Gillette Safety Razor Co. v. Cliff Weil Cigar Co., 4 Cir., 107 F.2d 105; Victor Cooler Door Co. v. Jamison Cold Storage Door Co., supra.

The history of the application in the Patent Office on the Davis patent, while not essentially controlling, is of evidentiary value in determining the extent and limitations of the patent as subsequently granted. Roemer v. Peddie, 132 U.S. 313, 10 S.Ct. 98, 33 L.Ed. 382; Knapp v. Morss, 150 U.S. 221, 14 S.Ct. 81, 37 L.Ed. 1059; American Seating Co. v. Ideal Seating Co., 6 Cir., 124 F.2d 70, 72. The last cited case has this to say:

"It is clear to us, as it was to the District Judge, that in view of the prior art only a narrow range of equivalents is permitted to fall within the scope of the claims in suit. The essence of the invention lies in the precise retaining means and in their positioning. The defendant has not appropriated such retaining means and has not similarly positioned those it has employed so there is no room for the expansion of the claims by construction to bring the defendant's means within their ambit, by the application of the doctrine of equivalency".

When the Davis application was originally filed in the Patent Office, the claim read as follows:

"1. A golf course comprising a solid rigid base of any shape and size to provide a fairway and green of a course, and a carpet applied to the top face of said base to present a playing surface.

"2. A golf course comprising a rigid solid base, a mold for said base with the upper edges thereof flush with the top face of said base, a carpet covering the top face of the base

and resting on the upper edges of the mold, and means for securing the carpet on the mold.

"3. A golf course comprising a rigid solid base, a mold for said base with the upper edges thereof flush with the top face of said base, a carpet covering the top face of the base and resting on the upper edges of the mold, means for securing the carpet on the mold, fasteners securing the carpet on the mold, and a guard rail conforming to the shape of the mold and resting on the carpet and fasteners".

The foregoing claims were rejected by the Examiner as having been fully met by prior patents to King (Br. 28,007), Angell (1,582,237), Meyer (1,591,095), Jackson (1,612,291), or Taylor (720,191). As to claims 2 and 3, the Examiner said:

"Claims 2 and 3 are rejected as not patentable over King. The mold and rail of the King device is the integral piece A. The mat H rests on top of and is secured to the mold portion of the member A. No invention would be involved in making the rail A in two parts; i. e., a rail and a mold section".

The amended application cancelled the foregoing "claim" and inserted in lieu thereof the following:

"4. A golf course structure comrising a rigid, solid, permanently embedded base, including a boundary mold and a concrete filling flush with the top of the mold, a characteristic carpet covering the top face of the base and extending marginally throughout the entire extent thereof onto the top of the mold, and means for securing said marginal portion of the carpet throughout the extent thereof to the mold.

"5. A golf course structure·comprising a rigid, solid, permanently embedded base, including a boundary mold frame and a concrete filling flush with the top edge portion of the frame, a carpet comprising a fabric filler body and an interwoven cushioning material covering the top face of the base and extending marginally onto the top edge portion of the mold frame throughout the entire extent thereof, said marginal portion of the carpet being nailed directly to the mold frame, and a separate guard rail conforming to the shape of the mold frame and placed on said mold frame on top of the attached marginal portion of the carpet and functioning as a supplemental fastening for the carpet."

In connection with the amended application the ultimate patentee has this to say:

"After a careful study of the several references placed of record in the case, it is realized that applicant's invention is not as broadly new as was believed at the time the application was filed. However, it is found that applicant's particular structure is materially different from those of the references and while the invention may be small there is sufficient patentable novelty to warrant the issuance of a patent to applicant. * * *

"Applicant's inventive idea is characterized more particularly by the structural provision of a permanently embedded base including the boundary mold frame 2 and concrete filling which is substantially flush with the top of the mold frame, together with the provision of a characteristic carpet 5 covering the base and extending marginally onto the top edge portion of the mold frame throughout the entire extent thereof and said marginal portion of the carpet being nailed directly to the mold frame, whereby the carpet is held tightly throughout its entire area upon the base, the invention being further characterized by the provision of the guard rail 8 which conforms to the shape of the mold frame and is placed on said frame over the attached marginal portions of the carpet. This structure is not shown or suggested in the several

references of record, considered either singularly or collectively. * *

'"Applicant has produced a practical and efficient structure, the base portion of which is permanently located, but with a novel renewable carpeting and guard rail provision, which is not disclosed in the references and it is therefore submitted that while applicant's inventive idea may be of a small degree, patentable ingenuity is involved in the production of the invention and claims 4 and 5 herewith presented should be allowed to afford applicant the protection to which he is entitled, early action to which effect is earnestly solicited".

The Examiner, in rejecting the amended application, said:

"Claims 4 and 5 are rejected as not patentable over King. The King patent discloses a device having a concrete base, a rail forming a mold for the base and a carpet-like member secured to the rail through its extent. The upper portion of the rail A of King could be separated from the lower portion if desired. Such separate rail, if placed on the carpet portion, would have only an obvious result and that would be a clamping or holding action".

Subsequent to the rejection of the amended application and an oral interview granted by the Examiner, applicant filed his second amended application inserting as his "claim" the language heretofore quoted in an earlier portion of this opinion. The second amended application states:

"As pointed out by applicant and discussed during the interview, it is essential that applicant's golf course structure includes a guard rail, whereas the supporting base for the teeing mat of the British patent to King, et al, cited in the last Official Action, does not include a guard rail and, furthermore, the provision of a guard rail surrounding the mat would defeat the very purpose for which the mat of the reference is primarily intended and used, that is to say, the mat of the reference is necessarily flush with the surrounding turf as described in the third paragraph on page 2 of the patent specification, this obviously being to avoid interference in the driving of the ball from the tee as well as eliminating the possibility of the player stumbling in stepping onto and stepping from the mat. Therefore, it is not obvious that the upper portion of the rail A of King, et al., could be separated from the lower portion and placed on the marginal portion of the carpet as stated in the last Official Action because in so doing the purpose of their invention would be defeated.

"As pointed out during the interview, not only is the guard rail an essential element of applicant's structure, but instead of having the carpeted structure of the supporting base flush with the surrounding turf, it is elevated some distance so that the playing surface of the golf course is readily drained and maintained in a playing condition. By securing the guard rail on top of the marginal portion of the carpet, which latter is nailed or otherwise fastened directly to the top of the boundary mold frame, the guard rail functions as a supplemental fastening for the carpet and obviates the necessity for providing finishing strips or beads which would otherwise be required.

"It is true applicant's invention may be small, but it is the result of ingenuity warranting the allowance of a patent thereon and it is submitted that the sole claim presented herewith should be allowed to afford applicant the protection to which he is entitled, early action to which effect is earnestly solicited".

It is apparent to this Court that the basis of plaintiffs' alleged invention lies in that portion of the "claim" which reads:

"and a separate guard rail secured to said mold frame on top of the attached marginal portion of the carpet and functioning as a supplemental fastening for the carpet".

Does this constitute an invention or a mere improvement upon a prior art and therefore not patentable? In the opinion of this Court it is a mere improvement and hence the patent is invalid.

■ The Examiner failed to make any reference to certain other patents now cited by defendants, same being Malloy (1,625,265), Inman (1,952,624), Smith (1,822,244), Valvano (Design 84,-224), Tramill (Br. 358,362) and Mannin (Br. 357,334). It is only necessary, in the course of this opinion, to make slight reference to these prior arts. Even though not cited as a reference by the Examiner, there is no presumption that these patents were overlooked as they may have been considered and cast aside as not pertinent. Artmoore Company v. Dayless Mfg. Co., Inc., 7 Cir., 208 F.2d 1.

■ Conceding that the burden of establishing invalidity of the patent rests upon the defendant herein, let us examine the essential elements which plaintiffs claim constitute an invention. It is obvious that the King patent covers all of the features of plaintiffs' patent with the possible exception of (1) a separate guard rail, and (2) securing the guard rail on top of the marginal portion of the carpet, thus permitting the guard rail to serve as a supplemental fastening for the carpet.

The use of a guard rail on a miniature golf course was not novel with Davis. Design Patent No. 83,499 issued to Carter on March 3, 1931, provided for same. Malloy, No. 1,625,265, while having many of the features of a game of billiards, contains a "surrounding ball cushioning wall" similar to the guards on a billiard table. Inman, No. 1,952,624, provided for a rebounding wall or rail to such an extent that the ball "is substantially prevented from leaving or bouncing upon the playing floor or surface". It is abundantly clear to this Court that plain-

tiffs' claim of novelty in the guard rail is without merit.

It is true that, except in Malloy, a separate guard rail is not provided and does not serve as a supplemental fastener for the covering or carpet. The Malloy patent was not cited as a reference by the Examiner on the Davis patent. If there is any invention in the Davis patent, it lies in this feature. While the Malloy patent has apparently not received commercial acceptance, this is largely immaterial to a final determination of this case. The separate guard rail in Malloy is undoubtedly more complex in construction than that in Davis, but it certainly serves as a supplemental fastener to the felt or fabric covering.

The remaining features of the Davis patent are so clearly covered by prior arts that it is unnecessary to discuss them in this opinion.

■ It is the conclusion of this Court that the Davis patent represents an assembly of old elements taken from prior arts relating to allied types of construction and, while undoubtedly a beneficial and successful improvement, does not involve the exercise of inventive faculty; thus the patent is invalid. Interstate Rubber Products Corp. v. Radiator Specialty Co., Inc., 4 Cir., 214 F.2d 546.

Little need be said with respect to the alleged infringement even if the Court is in error as to the validity of the patent. The separate guard rail constructed by defendants is not placed on top of the carpet and, to this extent, does not serve as a supplemental fastener. The fastening of the carpet by defendants is through the medium of glue or cement. The carpet does not lean against the guard rail. To hold that an infringement exists merely because the edge of the carpet extends to the inside edge of the guard rail, or to similarly rule that careless application of the glue in some instances has caused the carpet to "stick" to the guard rail thereby permitting the guard rail to serve as a supplemental fastener, would be overlooking the very intent and purpose of the alleged validity of the Davis patent. If there is any

merit to the Davis patent, it is in the guard rail being placed *on top* of the carpet. The defendants have not seen fit to adopt any comparable structure along these lines and no infringement exists.

The Court is not of the opinion that this is an "exceptional case" within the meaning of 35 U.S.C.A. § 285, justifying the award of reasonable attorney's fees.