**INGLETT & CORLEY, Inc., a corporation of Georgia, Plaintiff,**

v.

**BAUGH & SONS COMPANY, a corporation of Pennsylvania, Defendant.**

Civ. A. No. 2167.

United States District Court
E. D. Virginia,
Norfolk Division.

Feb. 26, 1958.

Breeden, Howard & MacMillan, Robert R. MacMillan, Norfolk, Va., Blair & Spencer, Richard Spencer, John C. Blair, Stamford, Conn., for plaintiff.

Willcox, Cooke, Savage & Lawrence, Thos. H. Willcox, Jr., Norfolk, Va., Samuel J. Stoll, Jamaica, N. Y., Percy Freeman, New York City, for defendant.

WALTER E. HOFFMAN, District Judge.

This controversy involves the validity and alleged infringement of United States Patent No. 2,705,607, issued on April 5, 1955, to the plaintiff, based upon an application filed by Wilfred L. Inglett on June 12, 1953. The plaintiff corporation is the assignee and owner of said patent and, since the action was instituted, has legally changed its name to Inglett and Company, Inc. Both plaintiff and defendant are citizens of different states, and defendant has an established place of business in the City of Portsmouth, Virginia, wherein the contended infringement occurred.

Plaintiff's patent is for an alleged new and improved *method* of weighing and bagging bulk materials consisting in the main of cement, feed and fertilizer. Defendant is a fertilizer company engaged in manufacturing, bagging and shipping various types of fertilizer in burlap and paper bags of different weights.

As noted, the patent in question involves a *method*, as contrasted with a *machine*, patent. When the application was first filed in 1953, it contained 12 claims directed to the *method* and 25 claims to the *machine*. The Patent Office rejected this application and the claims were again filed, although increased in number. Following a second rejection because of multiplicity of claims and prior art, the Examiners observed the

machine in actual operation and noted the methods used. Subsequently, the *machine* claims were eliminated and the *method* claims were rewritten, which resulted in the patent being granted [1].

The file wrapper does not indicate the results of the Examiner's further search for prior art, but a perusal of same strongly suggests that the application would not have been passed to issue if the search had revealed a prior art of holding the bags to a spout with a force insufficient to withstand the impact of the slugs (measured quantities) of material striking the bags.

An expert witness for plaintiff has analyzed the claims set forth in the patent in five separate steps. For the sake of brevity the precise wording of the claims will be omitted and the analysis of claim No. 1 accepted as follows:

"A method of bagging bulk materials which comprises the steps of:

"Step 1: supplying a succession of measured quantities of material in the form of fast moving slugs,

"Step 2: falling by gravity at substantially regularly spaced intervals from a generally vertical spout disposed above a horizontal supporting surface,

"Step 3: in the interval between each two successive supplying operations, applying an open-mouth bag to the spout in position to receive the next slug of material falling therefrom,

"Step 4: and thereupon holding said bag in said position with a force which is insufficient to withstand the impact of the slug strik-

ing the same, whereby the bags fall away from the spout and drop to said supporting surface responsively to the slugs being received in the bags, and

"Step 5: removing the filled bags as they drop to the supporting surface thereby to clear the space beneath the spout for the next bag-filling operation."

Claim No. 2 supplements the foregoing by merely providing that the bags are applied to the spout and *held there solely by hand* until the force of the slug drops the bag to the supporting surface.

Claim No. 3 includes claims Nos. 1 and 2, but specifies that the supporting surface to which the filled bags drop is movable at a rate such as to maintain the space below the spout clear of filled bags.

Claim No. 4 contains all the steps of claim No. 1, and further states that the bags are held to the spout with at least a portion of their open mouths spaced from the spout to permit *free egress of air from the bags* as the slugs deposit therein.

Claim No. 5 is identical with claim No. 1 other than providing that the bag shall be held at a level such that it *hangs clear of the bag-supporting surface* disposed a predetermined distance below the spout, which bag *automatically* drops from the spout to the supporting surface when the slug is received in the bag.

Claims Nos. 6, 7 and 8 are founded on claim No. 5, supplemented by the contents of claims Nos. 2, 3 and 4.

Claims Nos. 9 and 10 are a combination of the foregoing factors with

1. An examination of the file wrapper suggests what was in the minds of the parties in finally granting the patent, where it is said by counsel for the applicant:

"This amendment is presented after conferences with the Principal and Assistant Examiners in charge, and with a view to placing the case in condition for early allowance on the basis of method claims 54–61 (subsequently patent claims 1 to 8) submitted herewith. As to said claims, it is applicant's understanding that they will be favorably consid-

ered and the application promptly passed to issue if the Examiner's further search fails to develop prior art against one significant step of the claimed method, namely, that of holding the bags to the spout with a force insufficient to withstand the impact of the slugs (measured quantities) of material striking same, whereby the bags fall away from the spout and drop to a supporting surface responsively to the slugs depositing therein."

reference to predetermined weights of material in a *weigh chamber*.

In substance, it may be safely said that the validity of the patent rests, in the main, upon the analysis of claim No. 1 as aforesaid subject, however, to minor variations as suggested in the remaining claims.

■ The importance of claim interpretation in the light of the contents of the file wrapper should not be overlooked in a case of this nature. Davis v. Buck-Jackson Corp., D.C., 138 F.Supp. 908, affirmed 4 Cir., 230 F.2d 655, certiorari denied 351 U.S. 950, 76 S.Ct. 846, 100 L.Ed. 1474.

The patent in suit refers to a bag-filling method making use of a substantially conventional bag-filling machine, supplemented by a conveyor to remove the bags from beneath the spout. The machine automatically weighs and discharges quantities of bulk material such as fertilizer or feed, generally in 100-pound, 200-pound, or 50-pound charges. The material is discharged through a discharge spout, more commonly referred to as a bag spout, at the bottom of the machine. In operating the machine, a burlap or paper bag is held to the bag spout, the mouth of which projects into the mouth of the bag, and the machine automatically weighs out and discharges into the bag the quantity of bulk material. The bag is then removed, either automatically (by conveyor) or by hand, and the operation is then repeated.

Many of these machines are equipped with bag clamps on the spout. The bag is placed upon the spout, clamped in place, filled, unclamped from the spout, and then removed. The patent in question does not necessarily do away with the bag clamp but claims Nos. 2 and 6 state that the bag shall be held to the spout in a loose manner and solely by hand. Experience demonstrated that the clamps or clips were insufficient to hold the bag up when the full slug hit it, and, for this reason, the use of clamps is becoming increasingly unpopular although still used to an appreciable degree.

■ The crux of the alleged invention is not in the bag-filling machine—nor in the weighing process—nor in the discharge operation—nor in the conveyor belt. It resolves itself into the single simple step of holding the bag loosely to the bag spout so that the weight of the material so deposited will cause the bag to drop away from the spout upon the supporting surface. The mere existence of simplicity does not, in and of itself, negative invention. Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721.

When questioned as to plaintiff's machine with relation to the prior art, plaintiff's expert engineering witness conceded that, step by step, every piece in the machine is covered by the prior art, with the single exception of holding the bag to the spout with a force insufficient to withstand the impact of the slug of material striking the bottom of the bag. It was the conclusion of this expert that the combination of the old elements, taken together with the excepted step aforesaid, brought about a new result and thereby constituted an invention. His opinion that plaintiff's machine was a revolutionary development in the field of bagging materials was grounded upon the testimony of witnesses referring to saving money and expediting the output.

■ There is competent evidence in this case that the Inglett & Corley machine, together with the accepted method of bag-filling, has met with commercial success as a labor saving device with efficient operation resulting in increased productivity. Several of the witnesses, understandably of course, could not differentiate between plaintiff's machine and plaintiff's method, but aside from this point there is testimony to support the commercial success of the method. Commercial success is not, however, a substitute for invention. American Monorail Co. v. Parks-Cramer Co., 4 Cir., 245 F.2d 739; Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S.

147, 71 S.Ct. 127, 95 L.Ed. 162. Indeed, in American Monorail, supra, it was held that the District Judge was in error in attributing decisive weight to commercial success where the appropriate standard of invention is a legal, rather than a factual, question. In the instant case, the evidence of commercial success is not such that it controls, or is decisive, in ascertaining the validity of the patent in question, even though it may carry some weight as indicative of inventiveness and assisting in the presumption of validity. S. H. Kress & Co. v. Aghnides, 4 Cir., 246 F.2d 718; Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., supra.

■■ It is, of course, fundamental that a patent is presumed to be *prima facie* valid and, in this case, the burden of proof rests upon the defendant to overcome the presumption by clear and satisfactory proof. In this light let us examine the defenses interposed. They are as follows:

1. Plaintiff's patent is fully anticipated by the Arcady Farms Milling Company prior art.

2. The basic principles of plaintiff's patent are fully anticipated by the Hellman and Brown patents.

3. The alleged invention possesses no patentable merit as it is entirely within the skill of the art and does not substantially advance the same.

4. The claims of the patent cover an unpatentable aggregation as distinguished from a patentable combination.

### The Arcady Prior Art

In Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, it is stated that where an unpatented device, the existence and use of which are proven only by oral testimony, is set up as a complete anticipation of a patent, the proof sustaining it must be clear, satisfactory and beyond a reasonable doubt. Nevertheless, an unpatented prior public use may anticipate and invalidate a patent. Dewees v. Whisenant, 4 Cir., 241 F.2d 413.

■ The nature of the claimed method invention has been previously indicated and is substantially shown from the file wrapper heretofore quoted. Does the act of holding the bag to the bag spout with a force insufficient to withstand the impact of the slugs (measured quantities) of material deposited therein, whereby the bags are caused to fall from the spout and to drop to a supporting surface, constitute a *new, unexpected* and *useful result?* In the opinion of this Court the question must be answered in the negative.

The testimony of Geberin, plant manager of Arcady Farms Milling Company, reveals that representatives of the Union Bag Company visited Arcady's Chicago plant in 1951, at which time certain pellet machines were installed and in operation for the purpose of bagging bulk feed. Union Bag Company has operated as plaintiff's exclusive sales agents since September, 1953, only approximately three months following the filing of an application for the patent in suit. The pellet 1-2 machine was installed in Arcady's plant in 1944 and, so far as the invention claimed herein is concerned, has operated in the manner described since that date, in that bags are held in a position on the spout "with a force which is insufficient to withstand the impact of the slug striking the same, whereby the bags fall away from the spout and drop to said supporting surface responsively to the slugs being received in the bags". No bag clamps were used in this operation. True, from 1944 to 1954, the bags dropped upon a supporting surface which was a vibrating platform (Vibrox) and from there were lifted over to the sewing unit. In 1954, Arcady installed a sewing belt beneath the machine and removed the Vibrox, but this change is unimportant in determining the validity of the patent as there is no contention in this case that the addition of the conveyor belt constituted a patentable invention.

A so-called 5-6 pellet machine was in use by Arcady from 1947 to 1951 and the

method of operation was substantially the same as described in the pellet 1-2 machine; the major distinction being that the 5-6 machine had a square spout on the scale which necessitated holding the bags rather tightly in order to diminish the egress of air. In any event, the bags were permitted to drop to the supporting surface under the weight of the material. In May, 1951, a conveyor was installed on the 5-6 machine; it was converted from a hand tripped to an automatic operation; and clamps were placed upon the machine. Prior to 1951 no clamps were used.

There was no secrecy connected with the Arcady machines and their operations. The public was free to observe the details of the machines and its functional uses. The pellet 5-6 machine, as it was constituted during the period 1947–1951, was exhibited in the 1954 issue of Modern Packaging Encyclopedia.

If there be a distinguishing feature between Arcady's and plaintiff's machines, it lies in the fact that the spout in the Arcady machine is tapered and thus produces a more attenuated slug than plaintiff's machine. This is probably accounted for under the theory that the density of bulk fertilizer is two to three times that of bulk feed, and Arcady prefers that the slug, if it may be described as such, shall fall into the bag at a somewhat slower rate of speed. At what point attenuation causes fast moving quantities to cease being a fast moving slug is at best speculative. We are here considering a matter of degree and, similar to the situation contended by plaintiff that the bags are held to the Arcady machine with slightly more pressure than in the patented process, these questions are not of substance and have no patentable significance. Todd v. Sears, Roebuck & Co., 4 Cir., 216 F.2d 594.

Step by step the prior art of Arcady meets the claims as set forth in plaintiff's patent. The essential element of holding the bag "with a force which is insufficient to withstand the impact of the slug striking same, whereby the bag falls away from the spout to the supporting surface responsively to the slug being received in the bag", has been fully met by uncontradicted evidence. Considering the file wrapper history it is difficult to comprehend that, had the Examiners had knowledge of the Arcady prior art, the patent would have been issued. Manifestly, plaintiff's patent is fully anticipated by the Arcady prior art.

### The Hellman and Brown Patents

The Hellman patent, No. 1,794,517, issued March 3, 1931, and the Brown patent, No. 2,008,896, issued July 23, 1935, are relied upon by defendant as proof of the prior art anticipating plaintiff's patent. These two patents were not cited by the Examiner. The Hellman machine bags piston rings in an automatic operation; the piston dropping into the bag which is held with insufficient force to withstand the impact of the slug, whereby the bag is detached from its support and falls away. The Brown patent denotes a machine constructed for the purpose of packaging ice cream bars which latter may properly be considered as "slugs". In neither case may the products involved be classified as bulk material. In neither case are they classified as "Automatic Weighers" such as the patent in suit, as they are carried under the category of "Package Making". Both Brown and Hellman are from arts entirely dissimilar to the weighing and bagging of bulk material. It is believed the problems, the arts, the solutions, and the patents are not allied, and, while some of the principles in Brown and Hellman are substantially the equivalent of that presented in the patent in suit, there must be some reasonable limitation on principles anticipating a patent. Davis v. Buck-Jackson Corp., supra, is distinguishable on this theory. The Court is of the opinion that neither Hellman nor Brown anticipates plaintiff's patent.

### Unpatentable Aggregation versus Patentable Combination

While there is a serious doubt as to whether plaintiff's alleged invention is

patentable from a method viewpoint, it becomes unnecessary to discuss this point in light of the Court's prior determination with respect to the Arcady prior art. Suffice it to say, any novelty in the method patent is confined to the effect of gravity where a heavier substance drops into a container. As was said in Dewees v. Whisenant, supra [241 F.2d 414]:

"It is difficult to see, at this time in the history of the arts and sciences, how it could constitute a patentable invention."

Aside from the foregoing, the testimony clearly establishes that the method patent is merely an aggregation of elements which hardly results in anything new. At best it brings into play the law of gravity adapted to a multiplicity of elements well covered by the field of prior arts. Richards v. Chase Elevator Co., 158 U.S. 299, 15 S.Ct. 831, 39 L.Ed. 991, on rehearing 159 U.S. 477, 16 S.Ct. 53, 40 L.Ed. 225; Todd v. Sears, Roebuck & Co., supra; Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra.

### The Florida Litigation

Defendant stresses the fact that, in an action pending in the Southern District of Florida instituted by plaintiff against Everglades Fertilizer Co. Inc., the identical issues were considered by the Court and defendant's motion for summary judgment was sustained. The case is now on appeal to the Court of Appeals for the Fifth Circuit. Defendant likewise filed a motion for summary judgment in the instant proceeding, which motion was denied. While the decision of any court of equal jurisdiction may be persuasive, no significance is attached to the Florida ruling in determining the merits of this case.

### Infringement

It is fundamental that an invalid patent cannot be infringed, thus avoiding the necessity of entering into any detailed discussion of this subject. Prior to the trial the Court, in company with counsel, visited defendant's plant to see its machine in operation. During the course of the trial on its merits the Court, together with counsel, again visited defendant's plant and the plant of Swift & Company, the latter having installed one of plaintiff's machines. The method of operation was, in the opinion of the Court, substantially identical. If the patent is valid, there would appear to be an infringement thereof.

### Costs and Attorney's Fees

The Court is not of the opinion that this is a proper case for the allowance of attorney's fees. Defendant relies upon International Industries & Developments, Inc., v. Farbach Chemical Company, D.C., 145 F.Supp. 34, in which the court held that plaintiff misled the court into dismissing defendant's motion for summary judgment and made an allowance of $15,000 counsel fees. This Court adheres to its original position that a material issue of fact was presented by reason of the pleadings and the Arcady depositions, particularly where the burden rested upon the defendant to establish invalidity by clear and satisfactory evidence.

Each party will pay its own costs. Recognizing the rule that the prevailing party is generally entitled to recover costs, an incident occurred during the trial in which defendant's counsel telegraphed a witness in Chicago for whom a subpoena had been issued at the request of plaintiff, advising said witness that the subpoena had no effect outside the Eastern District of Virginia and that the subpoena did not require his presence in Norfolk. Counsel included a last sentence in said telegram which reads: "At our request the Judge confirmed this". The last quoted statement was untrue, although counsel's advice on the law was undoubtedly correct. Subsequently it became necessary to take the deposition of this witness in Chicago. Under these circumstances the Court concludes that each party should bear its own costs in connection with the entire litigation in this Court.