270 F.2d 539
 123 U.S.P.Q. 60
 James MOON, Edmond M. Wagner and Philip Subkow, Appellants,
v.
CABOT SHOPS, INC., and Howard Supply Company, Appellees.
CABOT SHOPS, INC., and Howard Supply Company, Appellants,
v.
James MOON, Edmond M. Wagner and Philip Subkow, Appellees.
 No. 16132.
 United States Court of Appeals Ninth Circuit.
 Sept. 21, 1959, Rehearing Denied Oct. 28, 1959.
 
 Philip Subkow, Beverly Hills, Cal., in pro. per., and for appellants.
 Lyon & Lyon, Charles G. Lyon, Los Angeles, Cal., Kenway, Jenney, Witter & Hildreth, Kenneth W. Brown, Boston, Mass., for appellees.
 Before BARNES, HAMLEY, and JERTBERG, Circuit Judges.
 HAMLEY, Circuit Judge.
 
 
 1
 Plaintiffs Moon, Wagner, and Subkow, as owners of Letters Patent No. 2,671,537, brought this action for damages and injunctive relief against Cabot Shops, Inc., and Howard Supply Company, claiming infringement of their patent.[1] Defendants denied infringement and affirmatively pleaded that the patent is invalid. The patent is invalid, defendants alleged, because the claims of the patent do not evidence invention over the prior art. As additional reasons for challenging the validity of the patent, defendants alleged that the material elements and combination of elements recited in the claims had been disclosed in prior publications and patents, and were in public use for more than one year prior to the filing date of the Moon patent.
 
 
 2
 The court, after hearing, adjudged the patent valid but not infringed and dismissed the action. Plaintiffs have appealed from that portion of the judgment holding the patent not infringed; defendants have cross-appealed from that portion of the judgment holding the patent to be valid.
 
 
 3
 The patent in suit involves a portable derrick of the type used for drilling and servicing oil wells. A telescopic derrick is mounted above the driver's cab at the front end of a truck chassis. An engine is mounted at the rear of the chassis. Winches are positioned between the driver and the engine. A hinge about which the derrick rotates is so positioned at the front of the chassis that when the derrick is transported it lies above the engine and the driver with its bottom to the front of the chassis. Means are provided to rotate the derrick on the hinge so that it may be erected. The derrick is transported in a collapsed position but is extended to working height on erection.
 
 
 4
 Prior to 1938 the conventional or permanent type of derrick was in common use in most oil fields. Subsequently, Franks Manufacturing Company, the predecessor of Cabot Shops, Inc., produced a protable derrick mounted on a truck chassis. This development made possible the servicing of many wells by a single derrick unit.
 
 
 5
 The Franks derrick was mounted on a conventional truck chassis with the truck motor at the front and the cab behind the motor. The derrick, of the telescopic type, was hinged at the rear of the truck and erected at that location. Before the derrick could be erected, however, it was necessary to back the truck into position in close proximity to the well head.
 
 
 6
 It is admitted that although this fact portable derrick was a significant achievement it contained several disadvantages inherent in its design.
 
 
 7
 First among these was the necessity of having to back the truck into position at the well head. The backing process was often time-consuming and difficult to accomplish. Second, this back-in type of derrick presented certain problems with regard to safety. It had only a small margin of stability. Moon testified that he had seen a back-in unit overturn. In addition, the hinging of the derrick at the rear of the chassis created some danger to the driver in the event the derrick should fall back during or after the erection process. Third, the back-in type, because of its weight and arrangement of components, was illegal for transportation over the highways of many states.
 
 
 8
 Moon filed his patent application June 28, 1948. On October 18, 1949, the Patent Office examiner rejected all the claims on the basis of the prior art. The examiner stated that the Moon structure was merely a reversal of the derrick from the rear to the front of the truck chassis and that such a change was a matter of mechanical expedience and not invention.[2]
 
 
 9
 This rejection was not acceded to and subseqnently amendments and additional claims were filed. These amended and new claims were also rejected by the Patent Office as too broad in view of the prior art.
 
 
 10
 On September 15, 1952, Moon requested the cancellation of all prior claims and submitted four new claims. These new claims were more specific with respect to the position of the derrick hinge. The examiner, although objecting to the form of these claims, indicated he would allow three of them if certain changes in language were made. He stated:
 
 
 11
 'The claims should specifically set forth the particular width relationship of the derrick legs and also the location of the cross bracing elements so as to indicate that the derrick legs will straddle the cab without interference with said cab or cross bracing. * * *'[3]
 
 
 12
 Moon acceded to the limitation suggested by the examiner and incorporated it into what is now claim one. The four previous claims were then canceled and four new ones were submitted. Claim five was added subsequently. The patent was granted March 9, 1954.
 
 
 13
 We turn first to the question of patent validity.
 
 
 14
 A presumption of validity arises from the issuance of a patent.[4] The presumption is predicated upon the expertness of the Patent Office acting within its specific field, and can be overcome only by clear and convincing proof. The burden of proof in such cases is upon the party attacking the patent, and reasonable doubts must be resolved in favor of validity. See Patterson-Ballagh Corp. v. Moss, 9 Cir., 201 F.2d 403, 406.
 
 
 15
 Defendants question the validity of the patent in suit on three grounds. They claim that Moon's structure is nothing more than a collection of elements old in the art combined in an obvious manner to produce an obvious result. Further, they contend that his structure lacks invention over the prior art. Finally, they maintain that the patent in suit was described in printed publications published more than one year prior to the filing of the application for the patent.[5]
 
 
 16
 The district court found that the structure described in the patent represented an inventive advance over the prior art. It also found that the invention of the patent was not patented or described in a printed publication more than one year prior to the filing of the application for the patent. It concluded that the patent was validly issued.
 
 
 17
 Defendants argue specifically that the only novelty involved in the patented structure is in the straddling of the driver's position by the derrick legs, and they deny that such straddling amounts to invention. They contend that such straddling is neither useful, desirable, nor advantageous.
 
 
 18
 Our review of the Patent Office proceedings convinces us that the examiner found the inventive feature of the Moon structure to be in the positioning of the derrick so that the legs straddle the driver's position. As before noted, the examiner rejected Moon's earlier claims on the ground that they were merely reversals of the prior art. When Moon qualified his claims, however, so that provision was made for the legs to straddle the driver's position, the claims were allowed. It would seem therefore that in the opinion of the examiner the straddling of the cab by the derrick legs was the crux of the invention.
 
 
 19
 We cannot say that the conclusion of the examiner in this regard was unwarranted. The Moon structure solved many of the problems posed by the back-in units. The derrick as combined with the chassis and the cab produced a structure which was at once stable, safe, and maneuverable. It was the interaction of the derrick with the chassis and the cab positioned as described in the claims that made for patentability in this case. It was that interaction which produced the desired stability, safety, and maneuverability not previously achieved by any portable derrick unit.
 
 
 20
 We cannot agree with defendants that the Moon structure lacks invention over the prior art. None of the cited prior art patents teaches the value of positioning the derrick so that its legs straddle the cab. None solves the problems of stability, safety, and maneuverability. In solving these problems, Moon's structure went beyond the prior art.
 
 
 21
 Defendants contend that the patent in suit is invalid by reason of prior publication. The district court found that the patent in suit had not been patented or described in any printed publication more than one year prior to the filing date of the patent in suit. Defendants argue that this finding is clearly erroneous because a number of pictures or sketches of the Moon structure were published more than a year before the application was filed. They argue that the pictures or sketches disclose the structure of the patent. The district court found that it was not clearly apparent from the evidence that the printed publications embodied the invention of the patent in suit.
 
 
 22
 The pictures or sketches of the Moon device in the printed publications show, with one exception, the derrick in its collapsed and horizontal position on top of the chassis. The pictures or sketches are of an advertising nature and are not detailed. In none of them is the hinge position clearly shown. Nor is it apparent that the driver's cab enters between the derrick legs. Numerous other details have also been omitted and must be filled in by the observer's imagination. In addition, the expert testimony of engineers as to what these pictures or sketches disclose was in conflict. The resolution of that conflict was for the trial court. It resolved it against the defendants. We do not think its finding on this point was clearly erroneous.[6]
 
 
 23
 We hold that the trial court did not err in concluding that Moon's structure involved intention and that the patent was validly issued.
 
 
 24
 We turn now to the matter of infringement.
 
 
 25
 Plaintiffs claim the defendants' structures infringe their patent in that they are not different in any substantial degree, and function in the same manner to produce the same results as the equivalent structures illustrated in the drawings of the patent in suit. The court below found that the defendants' structures do not infringe. It concluded that in view of the prior art the scope of plaintiffs' invention should be closely limited and the claims given only a narrow range of equivalents. Applying such a narrow range of equivalents, it determined that the accused devices were not included in that range.
 
 
 26
 Plaintiffs specify as error the above conclusions of the district court. We must, at the outset, therefore, consider the correctness of its ruling on the allowable range of equivalents.
 
 
 27
 The doctrine of equivalents gives to a patentee the benefit of his monopoly in every form in which it may be copied in the absence of manifest disclaimer, but the range of equivalents can in no event be more than commensurate with the scope of the patentee's invention. Etten v. Kauffman, 3 Cir., 121 F.2d 137, 140. In determining the permissible range of equivalents, the court must consider the state of the prior art, the novelty and contribution of the claimed invention, the nature and extent of the differences between the patented and the accused devices, the scope of the claim of the patent and the limitations in it, and other surrounding circumstances. Long Mfg. Co. v. Holliday, 4 Cir., 246 F.2d 95, 100.
 
 
 28
 The trial court had before it the prior art. It also had before it the proceedings before the patent examiner. It was aware of the history of this patent application. It was aware of the fact that Moon's claims had been rejected and amended several times before some were finally allowed. And it was also aware of the express limitation proposed by the examiner as a condition to the allowance of the patent claims. In our opinion the trial court did not err in determining that the patent should be restricted to a narrow range of equivalents.
 
 
 29
 We must next consider whether the accused structures come within this narrow range of equivalents.
 
 
 30
 As noted above, the invention of the patented structure is the positioning of the derrick so that its legs straddle the cab or driver's position. In order for the derrick legs to straddle the cab the derrick hinge must be positioned above the driver's position.
 
 
 31
 Defendants contend they do not infringe because they have moved the hinge forward (or the cab backward) so that the legs of the derrick do not straddle the cab. Plaintiffs maintain that this forward shift of the hinge (or backward shift of the cab) is merely an immaterial change in form and that it does not change the results obtained or the manner or means by which such results are obtained. It is plaintiffs' position that the accused structures are the full equivalent of thier structure.
 
 
 32
 Defendants admit the similarity of the structures, but they argue in substance that the Moon patent is limited by its straddling feature and that it is necessarily restricted in its claims to that form.[7] The claims which Moon originally sought to obtain from the Patent Office, defendants admit, would definitely be infringed by their structures.
 
 
 33
 It thus becomes necessary for us to analyze and construe the claims of the patent. In doing so, we are mindful of certain well-established rules of construction. Claims of a patent must be construed not only in the light of the specifications and drawings, but also with reference to the file wrapper history. Whiteman v. Mathews, 9 Cir., 216 F.2d 712, 715. That is, the claims of the patent must always be explained by and read in connection with the specifications and in the light of definitions and admissions made by the applicant in the proceedings in the Patent Office. Westinghouse Electric Corp. v. Hanovia Chemical & Mfg. Co., 3 Cir., 179 F.2d 293, 296-297. And a claim must be read and interpreted with reference to claims which have been rejected. Claims which have been allowed cannot, but construction, be read to cover what has been thus eliminated from the patent. Hall v. Wright, 9 Cir., 240 F.2d 787, 794.
 
 
 34
 Defendants argue that claim one of the patent defines the scope of the invention. They contend its limitations should be read into the four other claims. Plaintiffs, on the other hand, contend that claim one is narrower than the others and should not be read into them.
 
 
 35
 This court, in Kemart Corp. v. Printing Arts Research Laboratories, 9 Cir., 201 F.2d 624, 633, held that in interpreting a series of claims, a limitation not present in one claim must not be implied although it appears in later claims. The reason for this rule, we stated, is that each claim is in theory a separate patent. But 'this rule of construction is subordinate to the controlling rule that a patentee's broadest claim can be no broader than his actual invention, no matter how it may be expressed or what other claim his patent may contain.'
 
 
 36
 As before noted, claim one was expressly drawn to accommodate the proposal of the examiner that the claims specifically state the relationship of the derrick legs to the cab.[8] In their brief the plaintiffs admit that this limitation was incorporated into claim one, but deny it was incorporated into the other claims. They deny that in claims two through five the driver's position is required to be within the area bounded by the derrick legs.
 
 Claim two reads:
 
 37
 '* * * (the derrick) leg portions and said hinge being positioned with respect to the longitudinal axis of said chassis (a) locating said driver's position between the said leg portions with (1) the said leg portions straddling said driver's position when the derrick is in said erect position.'
 
 Claim three reads:
 
 38
 '* * * with said (derrick) leg portions straddling said driver's position when the derrick is in erect position.'
 
 Claim four reads:
 
 39
 '* * * said (derrick) leg portions * * * being located with respect to the longitudinal axis of said chassis (1) causing a portion of the driver's position to be positioned between the said leg portions, (2) said leg portions extending from said hinge to rest on the ground and straddle said driver's position with the derrick in said erect position. * * *'
 
 Claim five reads:
 
 40
 '* * * 1. locating said lower ends of one pair of front and rear legs * * * a. to one side of said driver's position and b. the lower ends of the other pair of front and rear legs * * * to the other side of said driver's position c. with the derrick in said erect position.'
 
 
 41
 It appears from the quoted portions of the claims that the straddling feature found in claim one is present in each of them. Plaintiffs contend, however, that the straddling concept as used in claims two, three, and four really means that two legs of the derrick are on one side of the driver and two are on the other. Their contention is, in other words, that the concept of straddling does not require the entry of the cab into the area directly between the two rear legs of the derrick. With respect to claim five, they argue that since it does not contain the word 'straddle' it clearly is broader and should not be limited to the specification of claim one.
 
 
 42
 In our view plaintiffs have ignored the meaning of the straddling language as used in claims one through four. These four claims use substantially the same language to describe the position of the erected derrick relative to the driver's position. There is nothing in the record before us to indicate that the examiner in allowing these claims thought that claims two, there, and four established a different specification from claim one. Claim five is consistent with claims one through four. We have no reason to believe it should be read more broadly than the other four claims.
 
 
 43
 The scope of the invention in this case is set forth clearly in claim one. In accordance with the rule of the Kemart case, supra, we decline to broaden it.
 
 
 44
 The factual finding of the trial court that the accused devices are not equivalent to the patent claims, as so construed, is not to be disturbed unless clearly erroneous. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 610, 70 S.Ct. 854, 94 L.Ed. 1097. We find no clear error in the making of this finding.
 
 
 45
 Although the doctrine of file wrapper estoppel was argued before the district court, that court declined to dispose of the case on that ground. In our view it could have done so. The patentee in this case narrowed his claims in order to escape rejection. By thus limiting his claims, he is estopped to enlarge them by resort to the doctrine of equivalents. D & H Electric Co. v. M. Stephens Mfg., Inc., 9 Cir., 233 F.2d 879, 883-884.
 
 
 46
 The patent in suit is valid but not infringed.
 
 
 47
 Affirmed.
 
 
 
 [1]
 Pursuant to 35 U.S.C.A. 281, and 28 U.S.C.A. 1338(a)
 
 
 [2]
 The examiner stated in part:
 'Applicant has merely taken McEwen's (McEwen patent No. 2,331,558) derrick structure and reversed the position, enclosing McEwen's standards * * * in the cab of the truck and causing the derrick to be raised forward of the truck rather than to the rear of the truck.'
 
 
 [3]
 The examiner also specified as follows:
 '* * * The rear legs of the derrick, as set forth in the specification and not the front legs, as stated in line 19 of claim 17, straddle the cab. * * * Upon satisfactory correction of claims 14, 15 and 17 along the lines indicated above such claims appear to be allowable.'
 
 
 [4]
 35 U.S.C.A. 282; Ralph N. Brodie Co. v. Hydraulic Press Mfg. Co., 9 Cir., 151 F.2d 91, 94
 
 
 [5]
 This contention is premised on 35 U.S.C.A. 102(b)
 
 
 [6]
 Our determination on this point makes it unnecessary for us to decide whether the trial court erred in concluding that the filing date of the patent application could not be carried back to an earlier date
 
 
 [7]
 See American Seating Co. v. Ideal Seating Co., 6 Cir., 124 F.2d 70
 
 
 [8]
 See footnote 3, supra